IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | 12-cv-2634 JWL/KGG |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | C O M P L A I N T |
| BURLINGTON NORTHERN SANTA FE RAILROAD, | ) ) ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Kent Duty, who was adversely affected by such practices. Burlington Northern Santa Fe Railroad denied Mr. Duty employment as a locomotive electrician because it regarded him as disabled.

JURISDICTION AND VENUE

1.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 200e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     The employment practices alleged to be unlawful were committed within the United States District Court for the District of Kansas.

PARTIES

3.     Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4.     At all relevant times, Defendant (the "Employer") has continuously been a Delaware corporation doing business in the State of Kansas and the City of Kansas City, and it has continuously had at least fifteen employees.

5.     At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6.     At all relevant times, Defendant Employer has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

STATEMENT OF CLAIMS

7.     More than thirty days prior to the institution of this lawsuit, Mr. Duty filed a charge with the Commission alleging violations of Title I of the ADA by Defendant Employer.  All conditions precedent to the institution of this lawsuit have been fulfilled.

8.     Since at least July 2008, Defendant Employer has engaged in unlawful employment practices at its Kansas City, Kansas facility, in violation of Section 102(b)(1) and (d)(3) of Title I of the ADA, 42 U.S.C. §§ 12112(b)(1) and (d)(3).

    a.   Defendant Employer failed to hire Mr. Duty to work as a locomotive electrician because it regarded him as disabled due to impairments to his right hand and wrist that are the result of injuries he sustained in a car accident more than twenty years ago.  Defendant Employer made this decision even though Mr. Duty could safely perform the essential functions of the locomotive engineer position with his impairments.  Specifically:

        1.   Mr. Duty was injured in a car accident in 1986.  As a result of the accident, Mr. Duty has limited grip strength in his right hand and limitation in the range of motion in both his right hand and wrist.

        2.   In July 2008 Mr. Duty applied with Defendant Employer to work as a locomotive electrician.

        3.   The essential functions of the locomotive electrician position include using tools and climbing ladders safely.

        4.   Mr. Duty is qualified to perform the essential functions of the locomotive electrician position, including using tools and climbing ladders safely, because he has been employed as an industrial maintenance electrical technician/manager since 1992 performing these and other industrial electrician job duties without any problem.

5.      On August 1, 2008, Mr. Duty participated in a "Realistic Job Preview & Testing" session, provided a hair specimen for drug testing, underwent aptitude testing, and participated in a job interview at Defendant Employer.

6.      On August 19, 2008, Defendant Employer extended Mr. Duty an offer of employment conditioned upon him successfully passing a post-offer medical evaluation, among other things.

7.      A contractor for Defendant Employer, Comprehensive Health Services, Inc. ("CHS"), performed the post-offer medical evaluation of Mr. Duty and noted that he had significant functional impairment in his right forearm and hand.  CHS forwarded this information to Defendant Employer's Medical Review Department ("MRD").

8.      On September 22, 2008, Defendant Employer's MRD sent Mr. Duty an email stating that it could not determine that he was medically qualified for the locomotive electrician position. However, the email stated that Mr. Duty could submit additional information about the functional abilities of his right hand/wrist and be reconsidered for the position.

9.      In October 2008, Mr. Duty corresponded with Defendant Employer on several occasions to confirm that additional information was needed even though he had been working

successfully in the electrical maintenance field since 1992 without a problem.

10.    On December 5, 2008, Mr. Duty obtained, at his expense, an assessment of his right upper extremity from Scott Woods DSC, PT of Corporate Care Occupational Medicine Network and provided it to Defendant Employer's MRD.  The report noted that Mr. Duty had impairment of his right hand and wrist but found that he had a functional "hook grip."

11.    On December 29, 2008, Defendant Employer informed Mr. Duty by email that Dr. Jarrard, an employee of Defendant Employer, had determined that he was not qualified for the locomotive electrician position due to "significant risks associated with lack of grip strength in your right hand, including safety concerns such as your inability to support your body weight with one hand during mandatory three point contact when climbing on and off locomotives." Dr. Jarrard's notes further state that "he [Mr. Duty] would not be able to safely perform all the essential functions of this [the locomotive electrician] position and his lack of strength and movement poses significant risks of injury to Mr. Duty or others in the [position]." Dr. Jarrard neither examined Mr. Duty nor furnished him an opportunity to demonstrate that he could perform the essential functions of the locomotive electrician position safely before reaching these conclusions.

12.   Defendant Employer later stated, more specifically, that it revoked the conditional job offer it extended to Mr. Duty because he would be a safety risk in that he could not meet its requirement that he have three points of contact when ascending and descending ladders and he could not grip tools firmly with both hands.

13.   If Mr. Duty could not safely perform any jobs involving the use of tools and ladders, as Defendant Employer believed, Mr. Duty would be substantially limited in the major life activity of working.

14.   Defendant Employer made no effort to assess whether the danger Mr. Duty allegedly would pose working as a locomotive electrician could be eliminated by any means and did not employ Mr. Duty.

b.   Defendant Employer used the results of a pre-employment medical "examination" by its physician to disqualify Mr. Duty from the locomotive electrician position based on its unfounded fear and speculation that he posed a risk of injury to himself and others when Mr. Duty was actually able to perform the essential functions of the job safely.  The particulars of this claim are described in paragraphs 8.a.1-14, above.

9.   The effect of the practices complained of in paragraph eight above has been to deprive Mr. Duty of equal employment opportunities and otherwise adversely affect his status as and an employee because of his disability.

10.   The unlawful employment practices complained of in paragraph eight above were intentional.

11.    The unlawful employment practices complained of in paragraph eight above were done with malice or with reckless indifference to the federally protected rights of Mr. Duty.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from: (1) failing to hire qualified applicants because of a disability or because it regards them as disabled, and (2) using the results of a pre-employment medical examination to disqualify applicants who actually can perform the essential functions of the position.

B.    Order Defendant Employer to institute and carry out policies, practices, and programs that provide equal employment opportunities for qualified individuals with disabilities and eradicate the effects of its past and present unlawful employment practices.

C.    Order Defendant Employer to make whole Mr. Duty, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to rightful place hiring of Mr. Duty.

D.    Order Defendant Employer to make whole Mr. Duty by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraph eight above, including emotional pain and suffering, in amounts to be determined at trial.

E.    Order Defendant Employer to pay Mr. Duty punitive damages for its malicious and reckless conduct, as described in paragraph eight above, in amounts to be determined at trial.

F.    Grant such further relief as the Court deems necessary and proper in the public interest.

G.    Award the Commission its costs of this action.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its complaint.


P. David Lopez
General Counsel


Gwendolyn Y. Reams
Associate General Counsel

Barbara A. Seely
Regional Attorney


C. Felix Miller
Supervisory Trial Attorney



/s/ Anne E. Gusewelle
Senior Trial Attorney


EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Kansas City Area Office
4th and State Avenue, 9th Floor
Kansas City, Kansas 66010
(913) 551-5844