# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**Equal Employment Opportunity Commission,**

        **Plaintiff,**

**Kent Duty,**

        **Plaintiff-Intervenor,**                        Case No. 12-2634-JWL

**v.**

**Burlington Northern Santa Fe Railroad,**

        **Defendants.**

## MEMORANDUM & ORDER

The Equal Employment Opportunity Commission (EEOC) filed suit against defendant Burlington Northern Santa Fe Railroad (BNSF) under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., alleging that BNSF regarded a job applicant as disabled when it failed to hire that applicant to work as a locomotive electrician. That job applicant, Kent Duty, has intervened in the lawsuit, alleging the same claim set forth by the EEOC and additional claims under the ADA—namely, that BNSF failed to hire him based on an actual disability and/or in retaliation for engaging in protected activities and failed to reasonably accommodate his disability.

BNSF has now moved to dismiss both the EEOC's complaint and the intervenor complaint on the grounds that the allegations therein are insufficient to comport with the requirements of Federal Rule of Civil Procedure 8 as interpreted by the Supreme Court in *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). With respect to the "regarded as" claim, BNSF contends that neither the EEOC nor Mr. Duty has sufficiently pleaded that BNSF regarded Mr. Duty as having an impairment that substantially limited his ability to work or that Mr. Duty could have performed the essential functions of the job with or without reasonable accommodation. With respect to the actual disability claim, BNSF contends that Mr. Duty has not sufficiently pleaded that his impairment substantially limits his ability to perform manual tasks. Finally, with respect to the retaliation claim, BNSF contends that Mr. Duty's intervenor complaint contains no facts suggesting that any decisionmaker might have knowledge of Mr. Duty's protected activities and no facts suggesting any causation between Mr. Duty's protected activities and BNSF's failure to hire him.[1]

**Background**

The following well-pleaded factual allegations, taken from the EEOC's complaint and the intervenor complaint, are accepted as true for purposes of BNSF's motions.[2] Plaintiff-Intervenor Kent Duty has physical impairments to his right hand and wrist as a result of injuries he sustained in a car accident at sixteen years of age, over twenty years ago. As a result of this

---

[1] BNSF initially moved to dismiss any separate claim asserted by Mr. Duty that BNSF failed to reasonably accommodate his disability, construing that claim as asserting the denial of an accommodation necessary to participate in the interview or hiring process. After Mr. Duty clarified that the claim is based on an alleged failure to reasonably accommodate Mr. Duty's ability to perform the job in question, BNSF withdrew that portion of its motion.

[2] When necessary in the context of the parties' arguments, the court will clarify what allegations are contained in the EEOC's complaint and what allegations are contained in the intervenor complaint.

impairment, Mr. Duty has limited grip strength in his right hand and limitation in the range of motion in his right hand and wrist. In July 2008, Mr. Duty applied for the open position of Locomotive Electrician at BNSF's Argentine facility in Kansas City, Kansas. In August 2008, BNSF responded to Mr. Duty's job inquiry and asked him to participate in a "Realistic Job Preview & Testing Session" and to interview for the position. Mr. Duty successfully completed the testing and interview process and, on August 19, 2008, BNSF extended a conditional offer of employment to Mr. Duty, subject to a drug screen, background check, physical examination, medical evaluation and medical history questionnaire.

Mr. Duty completed the medical questionnaire and a medical evaluation administered by a third-party. On September 22, 2008, Mr. Duty received an e-mail from the BNSF Medical Review Department notifying him that the third-party administrator had referred Mr. Duty's medical evaluation to the BNSF Medical Department for further review. The e-mail advised Mr. Duty that "BNSF Medical Review" was not able to determine Mr. Duty's medical qualification for the Locomotive Electrician position due to "uncertain functional abilities of the right hand/wrist" and that Mr. Duty could be reconsidered if he supplied a current Functional Capacity Evaluation (FCE) of his right hand and arm. The e-mail provided a detailed description of the information needed by BNSF Medical, including full range of motion measurements; pinch grip, palmer grip and fingertip dexterity assessments; and grip strength using Jamar dynamometer.

Upon receiving the e-mail, Mr. Duty asked Tamala Cleaver in BNSF's Human Resources department to provide him with a complete job description for the Locomotive Electrician position. BNSF never provided the job description. In early October 2008, Mr. Duty e-mailed

3

BNSF's Central Staffing Human Resources department to confirm that additional information was necessary despite the fact that he had been working successfully in the electrical maintenance field since 1992. The following day, October 7, 2008, Mr. Duty received a response from an unidentified person at BNSF (from the e-mail address "BNSF.Newhire@bnsf.com") which advised Mr. Duty that Central Staffing Human Resources did "not get involved in the Medical Review process," that he needed to follow the instructions provided to him by Medical Review, and that they could not override or change Medical Review's determination that additional information was needed.

Mr. Duty responded to that e-mail by expressing concern that his disability could "discount his options as a candidate" and that BNSF was not operating "within the description of an EOE employer." Mr. Duty advised Central Staffing that he could not provide an evaluation reflecting a fully functional right hand and asked for "what avenues" he might take to move the application process forward. On October 10, 2008, Mr. Duty received an e-mail (again from an unidentified person at the [BNSF.Newhire@bnsf.com](mailto:BNSF.Newhire@bnsf.com) address) reiterating that Central Staffing could "not get involved in the pre-employment medical process," that he needed to contact "BNSF Medical" regarding the decision, and that Central Staffing would not respond to e-mails at that inbox regarding the medical process.

In early December 2008, Mr. Duty obtained a FCE at his expense and provided it to BNSF. The evaluation concluded that Mr. Duty had minimal if any voluntary control of his right thumb, index finger, middle finger or ring finger but that he demonstrated the ability to utilize a functional hook grip to handle materials with his right hand. On December 29, 2008, Mr. Duty received an email advising him that the "BNSF Medical Officer has determined that

you are not medically qualified for [the] Locomotive Electrician position due to significant risks associated with lack of grip strength in your right hand, including safety concerns such as your inability to support your body weight with one hand during mandatory three point contact when climbing on and off locomotives." BNSF, then, revoked the conditional offer of employment that it had extended to Mr. Duty because he could not meet BNSF's requirement that he have three points of contact when ascending and descending ladders and he could not grip tools firmly with both hands.

**Pleading Standards**

Defendants' motions to dismiss are based on Federal Rule of Civil Procedure 12(b)(6). In analyzing such motions, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted). Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Burnett*, 706 F.3d at 1235 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

According to the Tenth Circuit, "[t]wo working principles underlie this standard. 'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" *Id*. (quoting *Iqbal*, 556 U.S. at 678). "Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not

5

suffice; a plaintiff must offer specific factual allegations to support each claim." *Id*. (citations and quotations omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. (quoting *Iqbal*, 556 U.S. at 679). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678). "The complaint must offer sufficient factual allegations 'to raise a right to relief above the speculative level.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). Although "[s]pecific facts are not necessary" to comply with Rule 8(a)(2), the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555)) .

"Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 1236 (quoting *Iqbal*, 556 U.S. at 679). "This contextual approach means comparing the pleading with the elements of the cause(s) of action." *Id*. (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)). While a plaintiff "is not required to set forth a prima facie case for each element, [he or] she is required to set forth plausible claims animating the elements" of each cause of action. *Id.* (quotations omitted). "Pleadings that do not allow for at least a 'reasonable inference' of the legally relevant facts are insufficient." *Id.* (citing *Iqbal*, 556 U.S. at 678).

**Regarded As Disabled**

6

Both the EEOC and Mr. Duty allege in their complaints that BNSF unlawfully regarded Mr. Duty as disabled due to his physical impairment. To prevail on such a claim, the parties must establish that BNSF treated Mr. Duty as having an impairment that substantially limits one or more major life activities. *See Dillon v. Mountain Coal Co.*, 569 F.3d 1215, 1218 (10th Cir. 2009).[3] Both the EEOC and Mr. Duty allege in their complaints that BNSF regarded Mr. Duty's physical impairment as substantially limiting in the major life activity of working. To prevail on a claim that BNSF regarded Mr. Duty as substantially limited in the major life activity of working, the EEOC and Mr. Duty must ultimately demonstrate that BNSF regarded Mr. Duty as significantly restricted in performing either a class of jobs or a broad range of jobs in various classes. *See id*.

BNSF moves to dismiss the parties "regarded as" claims first on the grounds that neither the EEOC nor Mr. Duty has sufficiently pleaded that BNSF regarded Mr. Duty as having an impairment that substantially limited his ability to work because they do not allege that BNSF regarded Mr. Duty as substantially limited in his ability to perform a broad range of jobs or a class of jobs. According to BNSF, the complaints allege only that BNSF perceived Mr. Duty as unable to work a single job—the Locomotive Electrician position at BNSF. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 493 (1999) (dismissal of "regarded as" claim appropriate where plaintiffs alleged only that employer regarded vision impairment as precluding them from holding positions as global airline pilots; because that position is a single job, the allegation does

---

[3] The parties agree that the standards of the ADA Amendments Act of 2008 do not apply to this case such that the court is required to apply the law as it stood prior to the enactment of the ADAAA. That issue, however, is largely irrelevant at this stage where the court is asked to analyze the appropriate pleading standards for an ADA case rather than any particular substantive standards under the ADA.

not support the claim that the employer regarded plaintiffs as having a substantially limiting impairment).

Unlike the plaintiffs in *Sutton*, however, the EEOC and Mr. Duty do not allege that BNSF regarded Mr. Duty's impairment as precluding him only from holding the single job of Locomotive Electrician at BNSF. They expressly allege, consistent with *Sutton*, that BNSF believed that Mr. Duty could not safely perform any jobs involving the use of tools and ladders such that BNSF regarded him as substantially limited in the major life activity of working. While BNSF acknowledges those allegations, it contends that the complaints lack any factual support for those allegations and it is not plausible that BNSF, in evaluating Mr. Duty's application for a specific position at BNSF, gave any thought whatsoever to Mr. Duty's general employability at BNSF or elsewhere. In other words, according to BNSF, the parties have not and cannot plead that BNSF considered Mr. Duty's qualification for any job other than the specific job for which he applied at BNSF.

While the court agrees that the EEOC and Mr. Duty have a difficult task ahead of them in terms of proving their claim, *see Dillon*, 569 F.3d at 1219 (because this type of claim rests heavily on the employer's state of mind, it is "extraordinarily difficult" to prove; and the task is more difficult because it is "safe to assume that employers do not regularly consider the panoply of other jobs their employees could perform"), the court believes that the allegations in the respective complaints are sufficient to permit a plausible inference that BNSF regarded MR. Duty as substantially limited in the major life activity of working. It is plausible that the EEOC and Mr. Duty will be able to prove that an inability to use tools and to climb ladders (or to firmly grip tools and to comply with the three-point contact safety rule, depending on what the

discovery process reveals) constitutes a substantial limitation on the ability to work in a class of jobs or a broad range of jobs in various classes. *See Chicago Regional Council of Carpenters v. Thorne Assocs., Inc.*, ___ F. Supp. 2d ___, 2012 WL 4458392, at *8 (N.D. Ill. Sept. 25, 2012) (declining to dismiss "regarded as" claim where plaintiffs alleged that employer construed lifting restrictions as disabling condition and that such restrictions were not unique to employer's jobs).

BNSF's second argument in support of dismissal is that neither the EEOC nor Mr. Duty has sufficiently pleaded that Mr. Duty could have performed the essential functions of the job with or without reasonable accommodation. *See* 42 U.S.C. §§ 12112(a); 12111(8). While BNSF concedes that the EEOC and Mr. Duty have pled that he was qualified to perform the essential functions of the locomotive electrician position, BNSF contends that neither the EEOC nor Mr. Duty has pled sufficient facts from which the court could plausibly conclude that Mr. Duty could perform certain functions specific to the locomotive electrician position—namely, the ability to maintain three-point contact when ascending and descending locomotive ladders and to maintain a firm grip on locomotive-related tools. According to BNSF, then, the parties' allegations that Mr. Duty was employed as an industrial maintenance electrical technician for 16 years prior to his application with BNSF is irrelevant in the absence of facts reflecting an ability to perform the specific tasks at issue here.

For several reasons, the court is not persuaded by BNSF's argument. Both the EEOC and Mr. Duty have expressly pled that Mr. Duty could climb ladders safely and use tools safely and that he was qualified to perform the essential functions of the locomotive electrician position. They allege that Mr. Duty successfully completed BNSF's "Realistic Job Preview and Testing

Session" and that he received a conditional offer of employment as a result. Accepting these allegations as true, it is certainly plausible that Mr. Duty was qualified to perform the essential functions of the locomotive electrician position with or without reasonable accommodation. Moreover, BNSF has not directed the court to any case law requiring the level of specificity that BNSF would require at this stage and it appears that courts have rejected that approach. *See Blackburn v. Trustees of Guilford Tech. Comm. College*, 822 F. Supp. 2d 539, 551 (M.D.N.C. 2011) (denying Rule 12(b)(6) motion where plaintiff alleged that she could perform the essential functions of the position but did not identify the specific essential functions of the position); *Kirbyson v. Tesoro Ref. & Mktg. Co.*, 2010 WL 761054, at *6 (N.D. Cal. Mar. 2, 2010) (rejecting defendant's argument that the plaintiff needed to plead with greater specificity the essential functions of the job that he sought); *Imbody v. C & R Plating Corp.*, 2009 WL 196251, at *1-4 (N.D. Ind. Jan. 23, 2009) (rejecting argument that plaintiff had not sufficiently pled enough facts to establish that he could perform the essential functions of the job).

    Finally, the approach espoused by BNSF would short-circuit the jury's role in an ADA case (or the court on summary judgment) to determine, as a factual matter, whether the job requirements relied upon by BNSF for its refusal to hire Mr. Duty are "essential functions" of the locomotive electrician position. *See Davidson v. America Online, Inc.*, 337 F.3d 1179, 1191 (10th Cir. 2003) ("Determining whether a particular function is essential is a factual inquiry."). BNSF's motion presumes that maintaining three-point contact on ladders and maintaining a firm grip on tools are essential functions of the job, such that if Mr. Duty does not adequately plead his ability to perform them, his case must be dismissed. But discovery may yet reveal that these job requirements are not "essential" or that an accommodation exists that would permit Mr.

10

Duty to perform them in any event. For this additional reason, then, it is entirely inappropriate to dismiss this claim based on an asserted lack of specificity about Mr. Duty's ability to perform these specific tasks.

For the foregoing reasons, the court denies BNSF's motions to dismiss the EEOC's and Mr. Duty's "regarded as" claims.

**Actual Disability**

In his intervenor complaint, Mr. Duty alleges that he has an actual disability and that BNSF discriminated against him on the basis of that disability. To prove that he is disabled under the ADA, Mr. Duty must have a recognized impairment; identify one or more appropriate major life activities; and show that the impairment substantially limited one or more of those activities. *Sanchez v. Vilsack*, 695 F.3d 1174, 1178 (10th Cir. 2012). Mr. Duty alleges that he has physical impairments to his right hand and wrist that substantially limit his ability to perform manual tasks "within the meaning of the ADA and its accompanying regulations." In order to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives," such as household chores, bathing and brushing one's teeth. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198, 202 (2002). It is not enough that the impairment render an individual unable to perform the tasks associated with a specific job. *Id.* at 200-01.

BNSF moves to dismiss Mr. Duty's actual disability claim on the grounds that Mr. Duty has not sufficiently pleaded that his impairment substantially limits his ability to perform

manual tasks. According to BNSF, the court must disregard Mr. Duty's legal conclusion that his impairment is substantially limited "within the meaning of the ADA and its accompanying regulations" and, then, is left with no allegations whatsoever suggesting how Mr. Duty's impairment limits his ability to perform manual tasks. Mr. Duty responds that BNSF is attempting to hold him to a heightened pleading standard that is not required in the Tenth Circuit and that he is not even required to plead the specific major life activity that is affected by his impairment, let alone how that impairment affects the major life activity. He further contends that the detailed clinical description of his impairment set forth in the complaint is sufficient to permit an inference that his ability to perform any manual task is severely restricted.

The Tenth Circuit has not addressed whether and to what extent a plaintiff must describe how an alleged impairment substantially limits the major life activity identified in the complaint. Prior to *Iqbal* and *Twombly*, however, the Tenth Circuit clearly indicated that a plaintiff was not required to enumerate in his or her complaint the major life activities in which he or she is substantially limited, which suggests, of course, that a plaintiff need not describe how an impairment substantially limits a major life activity. *See Davoll v. Webb*, 194 F.3d 1116, 1134 (10th Cir. 1999) (when instructing jury, district court correctly declined to limit plaintiff to the major life activity of working and properly instructed jury on other activities where plaintiff did not enumerate specific life activities in complaint and pretrial record and trial transcript contained considerable evidence of substantial limitations in various activities).

Since *Twombly* and *Iqbal*, the only Circuit Court of Appeals that has addressed the issue squarely is the Third Circuit in *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3rd Cir. 2009). In *Fowler*, the Third Circuit considered post-*Iqbal* standards for pleading violations of the

12

Rehabilitation Act and held that the plaintiff had sufficiently pleaded her Rehabilitation Act claim primarily because she had identified an impairment and alleged a limitation to sedentary work, which "plausibly suggest[ed] that she might be substantially limited in the major life activity of working." *Id*. at 213.[4] Rejecting the district court's conclusion that the plaintiff failed to sufficiently plead disability, the Circuit explained:

> Fowler is not required, at this early pleading stage, to go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations. Her complaint identifies an impairment, of which PUMC allegedly was aware and alleges that such impairment constitutes a disability under the Rehabilitation Act. Furthermore, her alleged limitation to sedentary work plausibly suggests that she might be substantially limited in the major life activity of working. Of course, Fowler must ultimately prove that she is substantially limited in a recognized major life activity to prevail on her claim. At the pleading stage, however, Fowler's allegation regarding disability is sufficient. This is so even after *Twombly* and *Iqbal*.

*Id.* at 213-14 (citations omitted); *accord Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012) ("Plausibility is not an exacting standard," and the plaintiff satisfied that standard by alleging that an impairment to his hip made it difficult to walk and stand).

While many Circuit Courts of Appeals have held that a plaintiff must identify a major life activity to survive a Rule 12(b)(6) motion, that conclusion is not inconsistent with the Third Circuit's approach in *Fowler* and, in any event, Mr. Duty's complaint complies with those decisions. *See Mora v. University of Texas Southwestern Medical Center*, 469 Fed. Appx. 295, 297 (5th Cir. 2012) (affirming dismissal of ADA claim where plaintiff's failure to specify which of her "life activities" is substantially limited was "fatal to stating a valid claim for relief");

---

[4] The substantive standards for determining whether an individual is disabled are the same under the Rehabilitation Act and the ADA. *Sanchez v. Vilsack*, 695 F.3d 1174, 1178 n.2 (10th Cir. 2012).

13

*Chapman v. U.S. Postal Service*, 442 Fed. Appx. 480, 485 (11th Cir. 2011) (affirming dismissal of ADA claim where plaintiff "did not specify whether she had a physical or mental impairment, what the disability was, or how it impaired a major life activity");[5] *Baptista v. Hartford Bd. of Educ.*, 427 Fed. Appx. 39, 42 (2nd Cir. 2011) (affirming dismissal of ADA claim where the plaintiff did not identify any major life activity that was allegedly affected by his impairment; how his impairment affected a major life activity; of whether the Board was aware of his alleged disability); *Hale v. King*, 642 F3d 492, 500 (5th Cir. 2011) (affirming dismissal of ADA claim where the plaintiff failed to allege that impairments substantially limited him in the performance of a major life activity).

In light of its decision in *Davoll v. Webb*, the court believes that the Tenth Circuit, if faced with the issue, would follow the approach taken by the Third Circuit in *Fowler* and would conclude that Mr. Duty's intervenor complaint sufficiently pleads a disability discrimination claim based on an actual disability. Mr. Duty, in his complaint, has identified a physical impairment to his right hand and wrist; has alleged that the impairment substantially limits his ability to perform manual tasks; and has included a detailed clinical description of his impairment that plausibly suggests that Mr. Duty is substantially limited in his ability to perform manual tasks. Requiring more detail from Mr. Duty concerning the extent of his limitations on his ability to perform manual tasks would, in the court's view, escalate the "plausibility standard" of *Twombly* and *Iqbal* to a level that the Tenth Circuit has rejected. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191-92 (10th Cir. 2012) (rejected heightened pleading

---

[5] The court does not read the *Chapman* decision as requiring a plaintiff to identify or describe "how" an impairment affects a specific major life activity but that the combination of defects in the plaintiff's complaint simply left no basis for a claim.

14

standard and emphasizing that "specific facts are not necessary" and that *Twombly* and *Iqbal* "do not require that the complaint include all facts necessary to carry the plaintiff's burden".) BNSF's motion to dismiss this claim is denied.[6]

**Retaliation**

The ADA makes it unlawful for an employer to retaliate against an individual "because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To state a prima facie case of retaliation under the ADA, a plaintiff must show that he or she engaged in protected opposition to discrimination; that a reasonable employee would have found the challenged action materially adverse; and that a causal connection existed between the protected activity and the materially adverse action. *EEOC v. Picture People, Inc.*, 684 F.3d 981, 988 (10th Cir. 2012).

In his intervenor complaint, Mr. Duty alleges that he engaged in protected opposition to discrimination when he e-mailed "the Central Staffing HR" at defendant on October 7, 2008 to express concerns that his disability could adversely affect his options as a job candidate and to question whether defendant was "operating within the description of an EOE employer." In response to his complaint, Mr. Duty alleges that he received an e-mail from an unidentified person from the email account "BNSF.Newhire@bnsf.com which stated:

---

[6] In its submissions, BNSF contends that Mr. Duty's impairment clearly does not substantially limit his ability to perform manual tasks because Mr. Duty, as alleged in his complaint, successfully uses a functional hook grip to mitigate his impairment. This, however, is an evidentiary inquiry more suitable for summary judgment.

> Mr. Duty
>
> I cannot get involved [in] the pre-employment medical process. Please follow the instruction you were provided below to contact BNSF Medical regarding their decision. We will NOT respond to emails at this inbox regarding the medical process.

According to Mr. Duty's complaint, in late December 2008, he received an e-mail advising him that the BNSF Medical Officer determined that Mr. Duty was not medically qualified for the Locomotive Electrician position and that BNSF was withdrawing its conditional offer of employment. According to Mr. Duty, defendant retaliated against him when it refused to hire him, refused to provide him reasonable accommodations so that he could perform the job and refused to provide him with a job description (which he had requested from the HR department on September 22, 2008).

In its motion to dismiss, defendant contends that Mr. Duty's intervenor complaint does not sufficiently state a plausible claim for retaliation because Mr. Duty fails to allege any facts from which the court could draw the inference that a nexus exists between his complaints to HR and either the Medical Officer's determination that he was not qualified for the position or BNSF's decision to withdraw the conditional offer of employment. Defendant further contends that the complaint is devoid of facts permitting the inference that the Medical Officer or any other decisionmaker even had any knowledge about Mr. Duty's protected activities. The court agrees that the intervenor complaint is deficient in these respects, but will permit Mr. Duty to file an amended complaint to cure these deficiencies to the extent he is able to do so.

In concluding that the intervenor complaint fails to state a claim for relief for retaliation, the court is guided by the Tenth Circuit's decision in *Khalik v. United Air Lines*, 671 F.3d 1188

(10th Cir. 2012). In *Khalik*, the Tenth Circuit affirmed the Rule 12(b)(6) dismissal of the plaintiff's Title VII claims, including a claim for retaliation. In that case, the plaintiff had alleged that she performed her job well; that she complained internally about discrimination on the basis of her race, national origin and ethnicity; and that she was terminated thereafter. *See id*. at 1193-94. The Circuit concluded that the plaintiff's complaint lacked specific facts necessary to satisfy the plausibility requirement. *See id*. at 1194. With respect to the plaintiff's retaliation claim, the Circuit explained:

> There is no context for when Plaintiff complained, or to whom. . . . There is no nexus between the person(s) to whom she complained and the person who fired her. Indeed, there is nothing other than sheer speculation to link the . . . termination to a . . . retaliatory motive.

*Id*. Mr. Duty's complaint offers some of the detail that was missing in *Khalik*, such as when he complained and to whom he complained. But like the complaint that was found deficient in *Khalik*, Mr. Duty offers no facts showing a nexus between the person to whom he complained (an unidentified person responding to an email he sent to Central Staffing HR) and the medical personnel who determined that he was not qualified for the position. Without any allegations concerning causation, such as knowledge on the part of the decisionmaker or adverse actions occurring contemporaneously with Mr. Duty's complaints, the court is left to speculate as to whether BNSF's decisions were retaliatory.

Other courts are in accord with the *Khalik* decision on the issue of pleading causation in connection with a retaliation claim, routinely granting motions to dismiss on plausibility grounds. *See Swanson v. Baker & McKenzie*, LLP, 2013 WL 1087579, at *5 (N.D. Ill. Mar. 14, 2013) (dismissing retaliation claim where plaintiff did not allege knowledge of complaints on

behalf of relevant actors involved in alleged retaliation); *Mandavia v. Columbia Univ*., 2012 WL 6186828, at *13 (S.D.N.Y. Dec. 12, 2012) (granting motion to dismiss where "Plaintiff does not allege any specific facts that could give rise to a plausible inference that [employer's motive] was retaliatory. To the contrary, Plaintiff appears to offer little more than a highly speculative argument that because Columbia's . . . action occurred later in time than his first EEOC Complaint, the Court should infer retaliatory motive. This argument does not suffice."); *Clarke v. Petersburg City Public School*, 2012 WL 5286957, at *4 (E.D. Va. Oct. 24, 2012) (dismissing retaliation claim where plaintiff failed to allege that decisionmaker had knowledge of protected activity); *Carlson v. CSX Transp., Inc*., 2012 WL 1657117, at *6 (S.D. Ind. May 10, 2012) (dismissing claim where plaintiff alleged only that she engaged in protected activity and suffered adverse employment actions months later); *Enadeghe v. Ryla Teleservices, Inc*., 2010 WL 481210, at *9 (N.D. Ga. Feb. 3, 2010) (dismissing retaliation claim where plaintiff failed to allege that decisionmaker had knowledge of protected activity).

Plaintiff's reliance on this court's opinion in *Bell v. Turner Recreation Commission*, 2009 WL 2914057 (D. Kan. Sept. 8, 2009) is unavailing. In *Bell*, the court denied a Rule 12(b)(6) motion to dismiss a Title VII retaliation claim, concluding that it was "difficult to imagine what more the court could require of plaintiff in terms of pleading her claims with specificity." *Id*. at *3. However, the plaintiff had pleaded that she complained to both her supervisor Ms. Todd and to her supervisor's supervisor and that she was suspended less than 90 minutes after delivering her written complaint. She further alleged that she was discharged on the day she returned from her suspension by the very supervisor to whom she had complained. Thus, the plaintiff's allegations concerning both the timing of the adverse actions and the fact that the decisionmaker

had received the plaintiff's complaints were more than sufficient to permit an inference that the employer had retaliated against the plaintiff.

By contrast, Mr. Duty has not alleged any facts from which the court may infer that any decisionmaker with respect to plaintiff's application for employment had any knowledge of Mr. Duty's protected activity such that the decision to deny employment might plausibly be based on a retaliatory motive. Similarly, there are no facts in the intervenor complaint from which the court could draw the inference that a nexus exists between his complaints to HR and either the Medical Officer's determination that he was not qualified for the position or BNSF's decision to withdraw the conditional offer of employment. If the adverse actions had occurred on the heels of Mr. Duty's complaint, then the court could likely infer the requisite causation. But based on Mr. Duty's allegation that the relevant decisions occurred nearly 3 months after he complained, and the complaint's suggestion that "Central Staffing HR" and "BNSF Medical" operate entirely distinctly from one another, plaintiff must plead additional allegations to raise the inference that BNSF failed to hire him in retaliation for his complaints. This is particularly true in light of the allegation that "BNSF Medical Review" initiated the medical review process, expressed concern about Mr. Duty's ability to perform the functions of the position, and sought additional information from Mr. Duty *before* he lodged a complaint with Central Staffing.[7]

---

[7] While it may be reasonable to infer causation between Mr. Duty's complaints to Central Staffing HR and that department's alleged refusal to provide a job description to Mr. Duty, Mr. Duty has nonetheless failed to state a plausible retaliation claim with respect to BNSF's failure to provide a job description because the complaint is devoid of allegations that BNSF's refusal to provide the job description would be materially adverse to a reasonable person. Mr. Duty alleges in his complaint that he needed the job description "to assist him in the requested information Defendant BNSF expected Plaintiff to provide," but this allegation is contradicted by other allegations in the complaint that BNSF gave him a detailed account of the medical

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss the complaint of the Equal Employment Opportunity Commission (doc. 13) is denied and defendant's motion to dismiss the complaint of Kent Duty (doc. 15) is granted in part and denied in part. Mr. Duty may file an amended complaint no later than April 26, 2013 to the extent he is able to cure the pleading deficiencies with respect to his retaliation claim

**IT IS SO ORDERED.**

Dated this 5th day of April, 2013, at Kansas City, Kansas.

                                            s/ John W. Lungstrum
                                            John W. Lungstrum
                                            United States District Judge

---

information he needed to provide to them. The information requested by BNSF may or may not comport with the actual job description for the position, but that is a separate issue from whether Mr. Duty actually needed the job description to help him figure out what information to provide to BNSF. To the extent he is able to do so, Mr. Duty may cure these deficiencies if and when he files an amended complaint.