# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

Equal Employment Opportunity Commission,

    Plaintiff,

Kent Duty,

    Plaintiff-Intervenor,    Case No. 12-2634-JWL

v.

Burlington Northern Santa Fe Railroad,

    Defendants.

## <u>MEMORANDUM & ORDER</u>

The Equal Employment Opportunity Commission (EEOC) filed suit against defendant Burlington Northern Santa Fe Railroad (BNSF) under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., alleging that BNSF regarded a job applicant as disabled when it failed to hire that applicant to work as a locomotive electrician. That job applicant, Kent Duty, intervened in the lawsuit, alleging the same "regarded as" claim set forth by the EEOC and additional claims under the ADA—namely, that BNSF failed to hire him based on an actual disability and/or in retaliation for engaging in protected activities and failed to reasonably accommodate his disability.

Previously, BNSF moved to dismiss the "regarded as" claims, the actual disability claim and the retaliation claim on the grounds that the allegations underlying those claims were insufficient to comport with the requirements of Federal Rule of Civil Procedure 8 as interpreted

by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The court denied BNSF's motion with respect to the "regarded as" claims and the actual disability claim, finding that the complaints satisfied the pleading standards of *Twombly* and *Iqbal*. With respect to Mr. Duty's retaliation claim, the court granted BNSF's motion but provided Mr. Duty an opportunity to file an amended complaint to the extent he was able to allege specific facts necessary to satisfy the plausibility requirement.

Mr. Duty has now filed an amended complaint in which he alleges additional facts concerning his retaliation claim as well as an additional "regarded as" claim. BNSF moves to dismiss both claims. As will be explained, the motion is denied.

## Background

The following well-pleaded factual allegations, taken from Mr. Duty's amended intervenor complaint, are accepted as true for purposes of BNSF's motion. Plaintiff-Intervenor Kent Duty has physical impairments to his right hand and wrist as a result of injuries he sustained in a car accident at sixteen years of age, over twenty years ago. As a result of this impairment, Mr. Duty has limited grip strength in his right hand and limitation in the range of motion in his right hand and wrist. In July 2008, Mr. Duty applied for the open position of Locomotive Electrician at BNSF's Argentine facility in Kansas City, Kansas. In August 2008, BNSF responded to Mr. Duty's job inquiry and asked him to participate in a "Realistic Job Preview & Testing Session" and to interview for the position. Mr. Duty successfully completed the testing and interview process and, on August 19, 2008, BNSF extended a conditional offer

of employment to Mr. Duty, subject to a drug screen, background check, physical examination, medical evaluation and medical history questionnaire.

Mr. Duty completed the medical questionnaire and a medical evaluation administered by a third-party. On September 22, 2008, Mr. Duty received an e-mail from the BNSF Medical Review Department notifying him that the third-party administrator had referred Mr. Duty's medical evaluation to the BNSF Medical Department for further review. The e-mail advised Mr. Duty that "BNSF Medical Review" was not able to determine Mr. Duty's medical qualification for the Locomotive Electrician position due to "uncertain functional abilities of the right hand/wrist" and that Mr. Duty could be reconsidered if he supplied a current Functional Capacity Evaluation (FCE) of his right hand and arm. The e-mail provided a detailed description of the information needed by BNSF Medical, including full range of motion measurements; pinch grip, palmer grip and fingertip dexterity assessments; and grip strength using Jamar dynamometer.

Upon receiving the e-mail, Mr. Duty asked Tamala Cleaver in BNSF's Human Resources department to provide him with a complete job description for the Locomotive Electrician position. BNSF never provided the job description. In early October 2008, Mr. Duty e-mailed BNSF's Central Staffing Human Resources department to confirm that additional information was necessary despite the fact that he had been working successfully in the electrical maintenance field since 1992. The following day, October 7, 2008, Mr. Duty received a response from an unidentified person at BNSF (from the e-mail address "BNSF.Newhire@bnsf.com") which advised Mr. Duty that Central Staffing Human Resources did "not get involved in the Medical Review process," that he needed to follow the instructions

provided to him by Medical Review, and that they could not override or change Medical Review's determination that additional information was needed.

Mr. Duty responded to that e-mail by expressing concern that his disability could "discount his options as a candidate" and that BNSF was not operating "within the description of an EOE employer." Mr. Duty advised Central Staffing that he could not provide an evaluation reflecting a fully functional right hand and asked for "what avenues" he might take to move the application process forward. On October 10, 2008, Mr. Duty received an e-mail (again from an unidentified person at the BNSF.Newhire@bnsf.com address) reiterating that Central Staffing could "not get involved in the pre-employment medical process," that he needed to contact "BNSF Medical" regarding the decision, and that Central Staffing would not respond to e-mails at that inbox regarding the medical process.

Thereafter, Mr. Duty made direct contact with BNSF's Medical Department in Fort Worth, Texas to explore his options aside from simply repeating the testing in which Mr. Duty had already participated. During a phone conversation with an unidentified person in the Medical Department, Mr. Duty explained the nature of his impairments, his work experience, his communications with human resources and the status of his job application and post-offer medical examination. My Duty then inquired about the need for further testing as set forth in the September 22, 2008 email from the Medical Review Department. The person to whom Mr. Duty spoke excused herself, explaining that she would need to speak to someone about Mr. Duty's inquiries, and then returned to tell Mr. Duty that she could not assist him other than to tell him to follow the instructions in the September 22, 2008 email requiring Mr. Duty to obtain a complete report to allow the medical department to evaluate his condition again.

4

In early December 2008, Mr. Duty obtained a FCE at his expense and provided it to BNSF. The evaluation concluded that Mr. Duty had minimal if any voluntary control of his right thumb, index finger, middle finger or ring finger but that he demonstrated the ability to utilize a functional hook grip to handle materials with his right hand. On December 29, 2008, Mr. Duty received an email advising him that the "BNSF Medical Officer has determined that you are not medically qualified for [the] Locomotive Electrician position due to significant risks associated with lack of grip strength in your right hand, including safety concerns such as your inability to support your body weight with one hand during mandatory three point contact when climbing on and off locomotives." BNSF, then, revoked the conditional offer of employment that it had extended to Mr. Duty because he could not meet BNSF's requirement that he have three points of contact when ascending and descending ladders and he could not grip tools firmly with both hands.

**Pleading Standards**

Defendants' motions to dismiss are based on Federal Rule of Civil Procedure 12(b)(6). In analyzing such motions, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc*., 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted). Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Burnett*, 706 F.3d at 1235 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

According to the Tenth Circuit, "[t]wo working principles underlie this standard. 'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" *Id*. (quoting *Iqbal*, 556 U.S. at 678). "Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Id*. (citations and quotations omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. (quoting *Iqbal*, 556 U.S. at 679). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678). "The complaint must offer sufficient factual allegations 'to raise a right to relief above the speculative level.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). Although "[s]pecific facts are not necessary" to comply with Rule 8(a)(2), the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555)) .

"Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 1236 (quoting *Iqbal*, 556 U.S. at 679). "This contextual approach means comparing the pleading with the elements of the cause(s) of action." *Id*. (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)). While a plaintiff "is not required to set forth a prima facie case for each element, [he or] she is required to set forth plausible claims animating the

elements" of each cause of action. *Id.* (quotations omitted). "Pleadings that do not allow for at least a 'reasonable inference' of the legally relevant facts are insufficient." *Id.* (citing *Iqbal*, 556 U.S. at 678).


**Regarded As Disabled**

In his amended intervenor complaint, Mr. Duty alleges that BNSF unlawfully regarded his physical impairment as substantially limiting his ability to perform manual tasks. To prevail on a claim that BNSF regarded Mr. Duty as substantially limited in the major life activity of performing manual tasks, Mr. Duty must demonstrate that BNSF regarded Mr. Duty as significantly restricted from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198, 202 (2002). BNSF moves to dismiss this claim on the grounds that Mr. Duty has not alleged that BNSF regarded Mr. Duty as substantially limited in his ability to perform activities that are of central importance to most people's daily lives but rather has alleged only that BNSF regarded him as substantially limited in his ability to grip tools with both hands and his ability to maintain a three-point contact while climbing ladders. Relying primarily on the Eighth Circuit's decision in *Breitkreutz v. Cambrex Charles City, Inc*., 450 F.3d 780 (8th Cir. 2006), BNSF contends that dismissal of the claim is appropriate in the absence of an allegation that BNSF regarded Mr. Duty as unable to perform tasks central to most people's daily lives.

In *Breitkreutz*, the plaintiff alleged that his former employer regarded him as substantially limited in the major life activities of working and lifting. *Id.* at 783. The district court granted summary judgment on the plaintiff's claims on the grounds that the evidence did not

demonstrate that the employer regarded the plaintiff as someone with an impairment that substantially limited a major life activity and demonstrate only that the employer regarded the plaintiff as someone who could not perform the essential functions of the particular job. *See id.* The Eighth Circuit affirmed the district court. *Id*. at 784. With respect to the plaintiff's claim that the employer regarded him as substantially limited in the major life activity of lifting, the Circuit stated:

> [W]e have noted a restriction on lifting alone is not a major life limitation. Rather than viewing lifting as a major life activity in its own right, it is more accurate to say that it is part of a set of basic motor functions that together represent a major life activity. A limitation on lifting together with limitations on other basic motor functions may create a triable issue of disability if in the aggregate they prevent or severely restrict the plaintiff from doing the set of manual tasks that are of central importance to most people's daily lives. Breitkreutz does not allege Cambrex perceived him as unable "to do the manual tasks central to most people's lives" where the type of evidence most relevant to establishing a substantial limitation in the major life activity of performing manual tasks, includes, for example, an individual's ability to do household chores, bathe, brush one's teeth, prepare meals, do laundry, etc. Regarding an employee as having a limitation that is not itself a disability cannot constitute a perception of disability.

*Id*. (citations, quotations and alterations omitted). Quite clearly, *Breitkreutz* does not suggest that the dismissal of plaintiff's complaint is warranted. As a review of the district court's decision at the summary judgment stage under the "much more stringent" Rule 56 standard, *Breitkreutz* has no bearing on the pertinent pleading standards for a "regarded as" claim under Rule 12(b)(6). *See Fowler*, 578 F.3d at 213; *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely.").

BNSF's reliance on *Breitkreutz* suggests that the real crux of BNSF's argument is that Mr. Duty will simply never be able to prove that BNSF regarded him as substantially limited in

performing tasks central to most people's daily lives.  To be sure, Mr. Duty's evidentiary burden will be difficult to satisfy as it is unlikely that BNSF considered the impact of Mr. Duty's impairment beyond the specific job for which he applied.  *See Dillon v. Mountain Coal Co.*, 569 F.3d 1215, 1219 (10th Cir. 2009) (discussing "extraordinarily difficult" task of proving "regarded as" claim).  Nonetheless, the court's focus at this stage is not on whether Mr. Duty will ultimately be able to prove his claim but on whether he has stated a plausible claim for relief.  Focusing on the pleading standards of *Iqbal* and *Twombly*, this court has already determined that Mr. Duty is not required to provide the degree of factual specificity urged by BNSF.  In resolving BNSF's earlier motion to dismiss Mr. Duty's actual disability claim—a claim that is similarly based on Mr. Duty's alleged substantial limitation on his ability to perform manual tasks—the court concluded that the Tenth Circuit would follow the approach highlighted by the Third Circuit in *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3rd Cir. 2009), wherein the Circuit squarely addressed post-*Iqbal* pleading standards in the context of a disability discrimination claim.  As this court explained previously, the Third Circuit in *Fowler* held that a plaintiff is not required, at the pleading stage, "to go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations."  *Id.* at 213.  While a plaintiff certainly must ultimately prove that he or she is substantially limited (or regarded as substantially limited) in a recognized major life activity to prevail on his or her claim, that plaintiff satisfies *Iqbal* and *Twombly* at the pleading stage by identifying an impairment of which the defendant was allegedly aware, alleging that the impairment constitutes a disability under the pertinent statute, and alleging facts that plausibly suggest a substantial limitation in a major life activity.  *See id.*

The court sees no reason to vary from *Fowler* which, in fact, concerned a "regarded as" claim. *See id*. at 212 (plaintiff alleged that she was injured at work and that employer regarded her as disabled). The court believes, then, that the Tenth Circuit would find that Mr. Duty's amended intervenor complaint sufficiently pleads a plausible disability discrimination claim based on a perceived disability. Mr. Duty has identified a physical impairment to his right hand and wrist, he has alleged that BNSF knew about that impairment, and that BNSF denied his employment application based on that impairment. He has further alleged that BNSF regarded that impairment as substantially limiting his ability to perform manual tasks. While he has not specifically alleged that BNSF regarded him as substantially limited in his ability to perform tasks that are central to most people's daily lives, he has alleged that BNSF knew that he had virtually no grip strength in his right hand and that he was denied employment on this basis.[1] Assuming these allegations are true, it is at least plausible that a complete inability to grip objects with one hand would qualify as a substantial limitation on the major life activity of performing manual tasks (including tasks that are central to most people's daily lives) and that BNSF accordingly perceived Mr. Duty as disabled within the meaning of the ADA. Thus, Duty's allegations, taken together, fairly embrace the contention that BNSF perceived Mr. Duty as having a substantial limitation on the ability to perform manual tasks. *See Roman-Oliveras v.*

---

[1] BNSF particularly criticizes paragraph 28 of Mr. Duty's amended intervenor complaint, which alleges that "[i]f Plaintiff-Intervenor was not capable of climbing ladders using a three point contact rule or gripping tools using both hands, as Defendant falsely claimed or believed, Plaintiff Duty would also be substantially limited in the major life activity of performing manual tasks." According to BNSF, this paragraph improperly makes a "logical leap" because the Supreme Court in *Toyota* held that manual tasks unique to any particular job are not necessarily important parts of most people's daily lives. But when the allegations in Mr. Duty's intervenor complaint are taken as a whole, the complaint plausibly suggests that BNSF regarded Mr. Duty as substantially limited in performing manual tasks that are central to most people's lives.

*Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 49 (1st Cir. 2011) (complaint satisfied *Iqbal* and *Twombly* despite the fact that it did not expressly assert that the defendant regarded the plaintiff as substantially limited in a class of jobs or a broad range of jobs in various classes; allegations were sufficient to "embrace that contention").

The court has uncovered one district court case with analogous facts that is instructive here. In *Hataway v. Board of Trustees of the University of Illinois*, 2013 WL 160442 (C.D. Ill. Jan. 15, 2013), the plaintiff developed degenerative arthritis in both wrists which resulted in an inability to perform the essential functions of his job as a shipping and receiving clerk—namely, frequently lifting objects weighing up to 70 pounds. *Id*. at *1. Eventually, his physician released him to work as long as the work did not require lifting or grasping objects weighing more than 20 pounds. *Id*. Shortly thereafter, plaintiff began receiving disability benefits and his employer placed him on disability leave. *Id*. Plaintiff then applied for an open position and his employer allegedly told him that he could not apply because he was "on disability." *Id*. The plaintiff filed suit under the ADA alleging that the employer discriminated against him on the basis of an actual disability and that it regarded the plaintiff as disabled. *Id*.

The employer filed a motion to dismiss both claims on the grounds that the plaintiff did not adequately plead that he was disabled under the ADA. *Id*. at *2. According to the employer, the plaintiff had alleged an impairment that interfered with work-related tasks rather than tasks that were of central importance to most people's daily lives. The district court denied the motion and concluded that the plaintiff's allegation that his arthritic wrists rendered him completely unable to grasp objects was sufficient to resist dismissal:

> Assuming this statement to be true, the complete inability to grasp objects must certainly qualify as a substantial limitation on the major life activity of performing manual tasks (not to mention lifting or working).  This allegation is a plausible effect of degenerative arthritis. . . . [Plaintiff] has pled just enough to proceed with his claim.

*Id*. at *3.  With respect to the plaintiff's "regarded as" claim, the employer further argued that its statement that the plaintiff was "on disability," coupled with the allegations concerning the plaintiff's impairment, were not sufficient to state a claim.  *Id*. at *5.  The court rejected this argument, concluding that such a claim was plausible and that discovery was necessary to determine the extent of the employer's knowledge and perceptions of the extent of the plaintiff's injuries; whether the plaintiff was capable of returning to full duty; and the seriousness of his injuries. *Id*. at *5.

The plaintiff in *Hataway*, then, was not required to specifically allege that the employer regarded him as substantially limited in performing tasks central to most people's daily lives because his allegations about his limitations with respect to work-related tasks made it plausible that he was similarly limited with respect to the major life activity of performing manual tasks. Plaintiff's allegations here concerning BNSF's perception of his grip strength, while certainly work-related, are similarly sufficient to state a plausible claim that BNSF perceived him as substantially limited in the major life activity of performing manual tasks.  Requiring more detail from Mr. Duty at the pleading stage would, in the court's view, escalate the "plausibility standard" of *Twombly* and *Iqbal* to a level that the Tenth Circuit has rejected. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191–92 (10th Cir.2012) (rejected heightened pleading standard and emphasizing that "specific facts are not necessary" and that *Twombly* and *Iqbal* "do

not require that the complaint include all facts necessary to carry the plaintiff's burden"). BNSF's motion to dismiss this claim is denied.[2]


## Retaliation

The ADA makes it unlawful for an employer to retaliate against an individual "because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  To state a prima facie case of retaliation under the ADA, a plaintiff must show that he or she engaged in protected opposition to discrimination; that a reasonable employee would have found the challenged action materially adverse; and that a causal connection existed between the protected activity and the materially adverse action.  *EEOC v. Picture People, Inc.*, 684 F.3d 981, 988 (10th Cir. 2012).

In his amended intervenor complaint, Mr. Duty alleges that he engaged in protected opposition to discrimination when he communicated with both the HR and Medical Review departments about the nature of his disability, his concerns about BNSF's requirement that he submit the results of a second medical examination and his options as a disabled candidate who, in his opinion, could perform the essential functions of the position he sought.  According to Mr. Duty, BNSF retaliated against him when it refused to hire him, refused to engage in an

---

[2] BNSF also contends that Mr. Duty has effectively pled himself out of court by alleging that BNSF regarded him as substantially limited in performing manual tasks simply because it concluded that he was unable to perform tasks unique to the Locomotive Electrician job.  The court, however, does not read Mr. Duty's complaint so narrowly and finds that he has stated a plausible claim for relief.

interactive process, refused to provide him reasonable accommodations so that he could perform the job and required him to submit to a second medical examination.[3]

In its motion to dismiss, BNSF contends that Mr. Duty, despite amending his intervenor complaint, has failed to state a plausible claim for retaliation under the ADA. According to BNSF, Mr. Duty's amended complaint suffers from the same deficiencies as his initial complaint—a failure to allege facts suggesting a plausible nexus between his protected activity and either the Medical Officer's determination that he was not qualified for the position or BNSF's decision to withdraw the conditional offer of employment. In Mr. Duty's initial complaint, he alleged only that he raised concerns to HR and there were no facts whatsoever suggesting that HR had any contact with anyone in the Medical Review. Indeed, the facts indicated that the Medical Review department operated independently of any oversight or input from HR. The court, then, concluded that, in the absence of facts suggesting that anyone in the Medical Review department had knowledge of Mr. Duty's comments to HR, his retaliation claim did not rise above the speculative level. In amending his complaint, Mr. Duty now alleges that he made direct contact with the Medical Review department and shared the same concerns directly with Medical Review—namely, the nature of his disability and his concerns about the requirement that he undergo a second examination. According to Mr. Duty, the purpose of the phone call was to explore his options aside from a second medical examination.

---

[3] Mr. Duty also asserts that BNSF retaliated by refusing to provide a job description. The court previously dismissed this claim on the grounds that Mr. Duty had not pleaded facts suggesting that the failure to provide a job description would be materially adverse to a reasonable person. Because Mr. Duty has not amended his complaint to address that deficiency in any respect, the court's prior order dismissing that claim stands.

Mr. Duty's amended complaint, then, sufficiently fills in the gaps of his initial complaint. He has specifically alleged a plausible connection between his protected activity and various adverse actions that BNSF allegedly took against him. Taking Mr. Duty's allegations as true, he contacted the Medical Review department directly, essentially sought to have a discussion about reasonable accommodations for his disability, and thereafter had his offer of employment withdrawn because the Medical Review department deemed him unqualified. Mr. Duty's allegations satisfy *Twombly* and *Iqbal*. BNSF's additional challenges to Mr. Duty's retaliation claim are more properly suited to resolution on summary judgment.[4] The motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for partial dismissal (doc. 47) of Kent Duty's first amended intervenor complaint is denied.

**IT IS SO ORDERED.**

Dated this 16th day of August, 2013, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

[4] BNSF, for example, contends that its failure to engage in an interactive process is not an adverse employment action; that it never "required" Mr. Duty to undergo a second examination; that Mr. Duty has not alleged a plausible connection between the unidentified person he talked to in the Medical Review department and the Medical Officer who determined that Mr. Duty was not qualified; and that Mr. Duty's contention that BNSF failed to reasonably accommodate him in retaliation for his complaints is improperly duplicative of his failure-to-accommodate claim. These challenges are more properly examined after the discovery process.