IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EQUAL EMPLOYMENT OPPORTUNITY      )
COMMISSION,                       )
                                  )
        Plaintiff,                )
                                  )
KENT DUTY,                        )   Civil Action No. 12-CV-2634 JWL/KGG
                                  )
        Plaintiff-Intervenor,     )
                                  )
v.                                )
                                  )
BNSF RAILWAY COMPANY,             )
                                  )
        Defendant.                )

## DEFENDANT'S RESPONSE TO PLAINTIFFS' JOINT MOTION TO COMPEL DEFENDANT TO PERMIT INSPECTION OF PREMISES

Defendant BNSF Railway Company opposes the Joint Motion to Compel Defendant to Permit Inspection of Premises filed by Plaintiff Equal Employment Opportunity Commission ("EEOC") and Plaintiff-Intervenor Kent Duty ("Duty") (collectively, "Plaintiffs").

## I.    INTRODUCTION[1]

Despite the efforts in the motion to downplay the scope of the request, what Plaintiffs are seeking is anything but routine and is highly invasive of BNSF's rights. Their request would allow Plaintiffs to run roughshod over BNSF's normal safety rules and training requirements, require BNSF to answer Plaintiffs' questions outside the

---

[1] BNSF has attached a number of exhibits in support of this response along with an index. Out of an abundance of caution, BNSF is seeking leave to file one item, the Woods Report, under seal, so it will be filed separately.

normal protections of a deposition, and require BNSF to use its equipment to allow Duty to attempt to conduct demonstrations of his own claimed abilities, all of which would present numerous safety problems and significantly disrupt BNSF's work processes, including by requiring it to remove one or more locomotives from normal service for extended periods of time.  Their request is unprecedented.  Indeed, despite the more than 20 years that have passed since the Americans with Disabilities Act became effective, no court has allowed anything even approaching the type of combined activities Plaintiffs are proposing to engage in at BNSF's facility using BNSF's equipment and BNSF's personnel.  The Court should deny the motion.

## II.    BACKGROUND

### A.    Factual Background.

Plaintiffs' motion to compel concerns their request to visit and engage in a number of activities at BNSF's Argentine, Kansas Locomotive Maintenance and Inspection Terminal ("LMIT").  The LMIT shop is a large area filled with numerous pieces of heavy moving equipment, and special care must be taken at all times.  *Reppond Decl.* ¶ 7 (attached as Exhibit G).  Many areas of the shop require the use of personal protective equipment and extensive safety instructions for persons accessing those areas.  *Id.*  The LMIT shop can be an unforgiving work environment for those untrained or who do not comply with safety instructions.  *Id.*  Serious and even life-threatening injuries can occur as a result of lack of training or noncompliance with safety rules and instructions.  *Id.*

Duty applied to work at the LMIT as a Locomotive Electrician in 2008.  Based on its initial screening and interview, BNSF extended him a conditional offer of

employment.  A conditional offer is not, however, BNSF's final decision about whether a candidate is qualified.  Like many employers, BNSF uses the congressionally approved process for determining if a medical condition precludes employment of an otherwise qualified candidate.  That process requires an employer to make a conditional offer first; only after such an offer may the employer explore potential medical issues affecting the candidate's qualification.  *See generally* 29 C.F.R. §§ 1630.13-14 and Appx.  Thus, a conditional offer means nothing about the candidate's qualification from a physical or medical perspective.

Duty underwent an initial medical-review screening after receiving a conditional offer.  BNSF's contractor obtained an occupational health assessment that it forwarded to Dr. Michael Jarrard, BNSF's Medical Review Officer and an occupational medicine specialist.  *See Jarrard Depo.* at 31, 86-88 (excerpts attached as Exhibit. A).  The report reflected significant limitations of Duty's functionality of his right hand but did not give Dr. Jarrard enough information to determine whether Duty could safely perform the duties of a Locomotive Electrician.  *Id.* at 116-18.  Among other things, the initial testing did not include grip-strength measurements.  *Id.* at 118.  Gripping is necessary to perform the essential functions of the Locomotive Electrician position.  *Id.* at 118-19.  Gripping also is essential to comply with BNSF's mandatory safety rule that requires employees to maintain three-point contact when getting on or off locomotives and other equipment, because maintaining three-point contact requires a firm grip with each hand to control body weight.  *Id.*

Dr. Jarrard sought more detailed data about the apparent functional limitations shown in the initial report. *Id.* at 119. Duty obtained a further evaluation from Scott Woods and supplied the report to BNSF. *Id.* at 184. The report shows significant limitation in Duty's right wrist movement, virtually no grip strength in Duty's right hand, and no ability to move the fingers or thumb of his right hand or maintain a "pinch grip" using the fingers or thumb. *Id.* at 185-86, 188-91. A true and correct copy of the Woods report is being submitted under seal as Exhibit B.[2] Based on Dr. Jarrard's individualized assessment of Duty, and relying on the most current available medical information represented by the Woods report, Dr. Jarrard determined that Duty was not qualified to safely perform the essential functions of the Locomotive Electrician position with or without reasonable accommodation. *Id.* at 190-205.

Plaintiffs seem to suggest that Dr. Jarrard made his decision while unaware of the essential functions of the Locomotive Electrician job. *See* Joint Motion at 3. But the deposition testimony they cite refers to whether Dr. Jarrard himself decides what is and is not an essential function, not whether he is aware of various essential functions. *See Jarrard Depo.* at 124. Dr. Jarrard testified at length about his knowledge of the job and in particular two issues that contributed to his decisions — first, that grip strength with both hands is necessary to maintain three-point contact in compliance with BNSF's mandatory safety rule, *id.* at 118-19, and second that many other aspects of the

---

[2] For context, photographs of Duty's arm and hand produced by Duty in this litigation are attached as Exhibit C.

Locomotive Electrician job require the ability to grip with the right hand, *id.* at 119-22.  It is undisputed that Duty lacks the ability to grip with his right hand.  *Id. at* 188-91; Ex. B.

## B.    Procedural Background.

BNSF has already responded to a barrage of discovery requests from Plaintiffs, provided numerous documents, and produced witnesses for many hours of depositions. Among the interrogatories BNSF answered is one propounded by Duty asking for a list of essential functions of the Locomotive Electrician position.   Although BNSF initially responded by referring Duty to documents, as permitted by Rule 33, it later became apparent that Plaintiffs intended to take a prolonged deposition of a Rule 30(b)(6) designee about those functions.  In order to facilitate the process and reduce deposition time BNSF supplemented its interrogatory answer with a list of the essential functions and other aspects of the Locomotive Electrician position.   During the most recent deposition, Plaintiffs asked whether BNSF would also supplement another interrogatory to identify which functions BNSF contended Duty was not qualified to perform.  *See generally* Joint Motion at 4-5.   BNSF agreed, not because its original answer was inadequate but hoping to avoid repetition of the previous prolonged questioning in depositions by counsel for both EEOC and Duty.[3]

Plaintiffs served a Joint Request for Inspection of Premises seeking access to the LMIT shop "for the purposes of the coordination of an on-site work analysis."  *See* Joint Request at 1 (attached as Exhibit D).  The request includes five integrated components of

---

[3] Plaintiffs do not, however, accurately describe that agreement in their motion, as the agreement contemplated trying to reduce deposition time, not add to it.  *See* Price Depo. at 107-110 (excerpts attached as Exhibit F).

the proposed analysis.  *Id.*  BNSF timely objected to the request.  Exhibit E.  The parties

conferred in an attempt to reach an agreement.  During the conference, counsel for Duty

stated that, among the other things sought, both she and counsel for EEOC wanted to visit

the BNSF shop with a videographer.  That statement led to BNSF's counsel's email

described in Plaintiffs' motion about the type of inspection BNSF would permit.  *See*

Joint Motion at 7.

**C.      Plaintiffs' Motion, and BNSF's Request For Oral Argument**

Plaintiffs' approach in their motion is to provide only basic arguments with limited

caselaw and reserve their main arguments for their reply brief.  That approach puts BNSF

at a disadvantage.  BNSF therefore may seek leave to file a sur-reply so that it has the

opportunity to fully address Plaintiffs' arguments under the appropriate balancing test.  In

any event, BNSF believes that oral argument on the motion may be helpful to the Court.

## III.    ARGUMENT

**A.      Plaintiffs Do Not Recite the Complete Legal Standard.**

Although Rule 34 authorizes a party to request entry upon designated land or other

property to allow the requesting party to "inspect, measure, survey, photograph, test, or

sample the property or any designated object or operation on it," courts agree that such a

request requires a heightened showing beyond mere relevance.  Because entry onto the

land of another party involves "greater burdens and risks than mere production of

documents, a greater inquiry into the necessity for inspection" is warranted.  *Belcher v.*

*Bassett Furniture Industries*, 588 F.2d 904, 908 (4th Cir. 1978); *accord Dusa*

*Pharmaceuticals, Inc. v. New England Compounding Pharmacy, Inc.*, 232 F.R.D. 155,

154 (D. Mass. 2005); *Johnson v. Mundy Indus. Contrs., Inc.*, 2002 U.S. Dist. LEXIS

19346, at *7 (E.D.N.C. Mar. 15, 2002).   In other words, the Court's inquiry is not

governed simply by the general relevancy standards under Rule 26(b).  *See Belcher*, 588

F.2d at 908 ("We therefore reject the plaintiffs' contention that the inspection in this case

must necessarily be governed by the general relevance standard of rule 26(b)."); *see also*

*Dusa*, 252 F.R.D. 154; *Johnson*, 2002 U.S. Dist. LEXIS 19346, at *7.   Rather, "an

inquiry into when to compel an inspection goes beyond mere 'relevance' and must

balance the need presented by the moving party against the 'burdens and dangers created

by the inspection.'"  *Johnson*, 2002 U.S. Dist. LEXIS 19346, at *7 (quoting *Belcher*, 588

F.2d at 908); *see also Keith v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, (C.D. Cal.

2005) (requiring plaintiff to provide evidence establishing a need for an inspection).

"Where the burdens and dangers that would accompany a proposed study outweigh the

degree to which the proposed study will aid in the search for the truth, the study should

not be permitted."  *Lykins v. Certainteed Corp.*, 2011 WL 6337631, *5 (citing *McDonald

v. Kellogg Co.*, 2011 WL 484191, *2 (D. Kan. Feb. 7, 2011)).

Plaintiffs' suggestion that BNSF bears the burden of resisting their request is not

accurate.  In balancing the need of the requested entry on premises against the burdens

and dangers, courts do not impose a burden on the property owner to make any special

showing necessary to defeat the request.  Instead, once the property owner disputes the

request, the court must conduct a balancing of interests to resolve the dispute without

starting from the perspective of the scales being tipped against the property owner.  *See*

*Morris v. Cabelas*, 2011 WL 2516904, * (D. Kan. June 23, 2011) ("*If the parties differ* as

7

to whether an inspection is appropriate, the court must balance the respective interests by weighing the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection.") (internal quotations omitted) (emphasis added); *accord Lykins*, 2011 WL 6337631 at *4 (same); *see also In re Air Crash Disaster*, 1991 WL 147365, *2 (N.D. Ill. July 26, 1991) ("*Because United opposes plaintiffs' proposed testing . . . the court must determine whether the proposed testing is permissible under [Rule] 26(c).*") (emphasis added).[4]

In addition to, and partially overlapping with, Rule 26(c) considerations, a court always "has discretion to limit discovery if it determines that '(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information ...; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit." *Lykins*, 2011 WL 6337631, *5 (quoting Fed. R. Civ. P. 26(b)(2)(C)); *accord McDonald*, 2011 WL 484191, *2.

Another important caveat applies to judicial resolution of a Rule 34(a)(2) dispute. Before even conducting the required balancing and other Rule 26 analysis, a court must ensure that the request is within the scope of and otherwise complies with Rule 34. First, the request must "describe with reasonable particularity" the items or activities to be

---

[4] BNSF recognizes that in *McDonald v. Kellogg Co.*, 2011 WL 484191, *2 (D. Kan. Feb. 7, 2011), Judge O'Hara did use the standard framework for ruling on a motion to compel production of documents even though the case involved a request for entry onto premises. But it is unclear whether the defendant there argued otherwise, and Judge O'Hara also recited the balancing standard from *Belcher*. *Id.* In any event, that case involved a routine and noninvasive study based on observations and recordings alone, not the extraordinary range of activities Plaintiffs seek here.

inspected and "must specify a reasonable time, place, and manner for the inspection and for performing the related acts." Fed. R. Civ. P. 34(b)(1); *Lykins*, 2011 WL 6337631 at *4. Second, a court must ensure that the activities being requested are within the scope of Rule 34(a)(2). In other words, the request must actually seek to "inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2); *see, e.g.*, *United States v. Territory of the Virgin Islands*, 280 F.R.D. 232, 236-37 (D. V.I. 2012) (noting and relying on absence of basis in rule for activity plaintiff requested). If — as here — the request is outside the scope of the rule or otherwise does not comply with the rule, there is no need to proceed through the analysis that would apply to a proper request.

**B.   The Request Fails to Describe the Requested Entry on Premises with Reasonable Particularity.**

A request for entry on premises must "describe with reasonable particularity" the items or activities to be inspected and "must specify a reasonable time, place, and manner for the inspection and for performing the related acts." Fed. R. Civ. P. 34(b)(1). Plaintiffs' request is rife with ambiguity and uncertainty. At the outset, BNSF notes that the request does not identify the persons proposed to attend the inspection on its property, state how many persons Plaintiffs' propose to bring, or provide any time limit on the proposed visit. All of those are basic points that should be addressed in the request. Beyond those matters, there are significant ambiguities in the request that prevent it from meeting the "reasonable particularity" standard.

The request is for the purpose of conducting an "on-site work analysis."  The request's opening paragraph states that the purpose of the requested access is for "the coordination of an on-site work analysis for the position of Electrician Diesel Engine – Locomotive."  *See* Joint Request at 1.  The individually numbered items either expressly refer to that term (or the similar term "worksite analysis") or likewise appear to be a part of the proposed "analysis."  *Id.* at 1-3.  Yet Plaintiffs' do not define "on-site work analysis" or "worksite analysis."  Some aspects are clear but others are not.  Reasonable particularity requires sufficient specificity so that a party should not have to guess at the intended meaning of a request.

One component of the "on-site work analysis" Plaintiffs seek to conduct is observing persons "in the performance of representative job tasks" including those "job tasks" BNSF claims Kent duty is unable to perform.  That is not a sufficient description for purposes of a Rule 34 inspection.  Although BNSF has agreed to supplement an interrogatory answer to specify essential functions of the position that Duty is not qualified to perform, essential functions are not the same as particular job tasks.  *See* Joint Motion at ex. B (reciting the essential functions).  It thus is unclear what precise tasks Plaintiffs are requesting to observe.[5]

More importantly, Plaintiffs have provided no explanation for how the tasks are to be identified or made available for their observation.  The request appears to require

---

[5] To the extent the parties may have a dispute about written discovery, Plaintiffs must raise that dispute in a motion to compel directed to that written discovery.  They cannot avoid the ordinary process by seeking an order requiring BNSF to disclose information under the guise of an inspection of its premises.

BNSF to conduct a demonstration of tasks that BNSF contends Duty cannot perform, which is problematic for the many reasons given below.  But during the parties' pre-motion conference Plaintiffs' counsel stated that they did not want BNSF to orchestrate a demonstration but wanted to observe the work being performed in the ordinary course.  If that is the case, then it is unclear how Plaintiffs' would propose to see particular tasks rather than simply whatever tasks happened to be taking place at the time of the visit.  But for present purposes, the point is that their request is insufficiently specific.  BNSF simply does not understand the process by which Plaintiffs are proposing to conduct the "on-site work analysis."  A property owner should not be so in the dark about exactly what a litigant demanding to enter its property proposes to do.

A similar problem exists with respect to items 4 and 5 of the request for entry on premises.  Those items seek "[a]ccess" to climbing mechanisms and tools but do not specify which tools and more importantly do not specify what Plaintiffs would be doing during such "[a]ccess."  BNSF is entitled to know whether Plaintiffs want to view the items, photograph them, measure them, attempt to demonstrate use of them, all of those things, or something else.  Plaintiffs' failure to provide that information in their request renders the request invalid for failing to specify with reasonable particularity the activities they mean to request.

BNSF asks the Court to deny the motion, leaving Plaintiffs' to re-serve, if they wish, a request that complies with the reasonable particularity and other requirements of Rule 34.

**C.      Rule 34 Does Not Permit the "On-site Work Analysis" Plaintiffs Seek.**

Despite the ambiguities of the request, its stated purpose is to conduct an "on-site work analysis" comprising of the combination of activities set out in items 1 through 5 of the request.  *See* Joint Request at 1-3.  The numbered items are not separately requested activities or alternative requests, in other words, but integrated components of one process — conducting an "on-site work analysis."  *Id.*  Because the Rule does not permit such an "on-site work analysis," however, the Court should deny the motion to compel.[6]

Rule 34(a)(2) authorizes a party to request entry onto designated property "so that the requesting party may <u>inspect</u>, <u>measure</u>, <u>survey</u>, <u>photograph</u>, <u>test</u>, or <u>sample</u> the *property* or *any designated object or operation on it*."  Fed. R. Civ. P. 34(a)(2) (emphasis added).  Contrary to Plaintiffs' contention that their request falls within the Rule, the "on-site work analysis" they seek to conduct is a hybrid, multi-faceted procedure that involves some aspects of activities described in the rule but also numerous activities that are not permitted by the rule.  They envision a process where they will conduct a study that involves inspecting, measuring, and photographing of items and operations, activities that are within the rule.  But their desired analysis also involves (1) some undisclosed but necessarily collaborative process for BNSF to identify, describe, and facilitate the performance of certain tasks and identify particular work operations, tools, and equipment, (2) BNSF personnel answering questions during the analysis, and (3) Kent

---

[6] Plaintiffs' description of their request in their joint motion appears to downplay the scope of the request.  Contrary to that description, the request did not "suggest[] a variety of ways they could gather information."  Joint Motion at 5.  It sought to engage in each of those activities.  *See* Joint Request at 1-3.

Duty himself using BNSF equipment and tools to attempt to demonstrate his own performance of certain tasks for his potential experts, presumably after being shown by a paid BNSF employee how to perform such tasks.

But Rule 34 does not contemplate requiring a party to make its premises available to the opposing party and to participate jointly with that opposing party in various tests and demonstrations it wants to conduct.  Nor does the rule contemplate such "on the fly" information disclosures.  Courts have accordingly rejected several of the components required for Plaintiffs' proposed "on-site work analysis."

First, several courts have rejected requests to interview employees of the responding party during a premises inspection.  In *Belcher* the Fourth Circuit agreed with the defendants' argument that a request similar to what Plaintiffs want — the ability to ask whatever questions they deem appropriate as they conduct other activities — would be "tantamount to a roving deposition."  *See Belcher*, 588 F.2d at 907.  The court explained that "the safeguards of true depositions will be absent" and held that those safeguards "for deposing witnesses cannot be so easily circumvented."  *Id.* at 910. Likewise, the court in *United States v. Territory of the Virgin Islands* extensively discussed the issue, concluding first that the rule simply did not provide for interviews and second that the undefined nature of the proposed interviews was itself reason to refuse to allow interviews.  *See* 280 F.R.D. at 236-38.[7]  Other courts have held likewise. *See Curry v. Allan S. Goodman, Inc.*, 2003 WL 22305161, at *1 (D. Conn. May 22,

---

[7] The court also rejected the argument of the plaintiff (the United States) relying on four cases that have allowed interviews of some type during an entry onto premises, explaining that those cases involved highly unusual circumstances.  *See* 280 F.R.D. at 237 & n.7.

2003) (permitting inspection for observation purposes but prohibiting questioning of defendant's employees).

Second, to the extent Plaintiffs intend that BNSF be ordered to ensure that certain job tasks are performed for their observation whether or not those tasks would be performed in the ordinary course of work or otherwise conduct a demonstration of job tasks, courts have not approved such requests. In *Istre v. Main Iron Works, L.L.C.*, 2012 WL 1118634 (E.D. La. April 3, 2012), the court refused to require a party to use its premises, equipment, and personnel to conduct a demonstration for a plaintiff. The court held that "the law is clear on this issue: A party can not compel another party to conduct any test that that party has devised." *Id.* at *2; *see also In re Air Crash Disaster*, 1991 WL 147365 at *2 (airline not required to make its aircraft and flight crew available to conduct a demonstration of events leading to accident); *Sperberg v. Firestone Tire & Rubber Co.*, 61 F.R.D. 80, 83 (N.D. Ohio 1973) ("each party is free to prepare and perform tests in the manner he deems best, but he cannot compel another party to perform the same tests"). To the extent Plaintiffs intend for BNSF to orchestrate the performance of various job tasks other than in the ordinary course of the shop's workflow they are seeking precisely what those cases prohibit.[8]

---

[8] The only case BNSF is aware of where a court ordered a non-requesting litigant to perform tasks in connection with an entry on its premises other than making items available is *Peterson v. Union Pacific R.R. Co.*, 2007 WL 3232501, at *2 (C.D. Ill. Nov. 1, 2007), where the court ordered the defendant to operate a crossing signal system during a two-hour window when no rail traffic was scheduled to be at the particular crossing. Although BNSF does not agree with that decision, there is no comparison between what Plaintiffs seek here and the very limited operations the defendant's employees in Peterson had to perform during a small window of time that would not disrupt the defendant's normal operations.

14

Third, and relatedly, the request that Duty be permitted to use BNSF equipment and tools to attempt to demonstrate his own performance of certain tasks for his potential experts is outside the rule and foreclosed by the cases just discussed. The rule, when applicable, permits a party to "inspect, measure, survey, photograph, test, or sample" property, a designated object, or a designated operation. Fed. R. Civ. P. 34(a)(2). It does not allow a litigant to use the opposing side's property to conduct a test not of the property but of the litigant. To the contrary, Duty's request that he be allowed to use BNSF's property to give a demonstration to his own experts is no different in effect than the proposed testing and demonstrations the courts rejected in the cases discussed above. The request for Duty to attempt to demonstrate his abilities using BNSF's equipment is simply outside the realm of what is permitted under Rule 34(a)(2).

Plaintiffs have not cited a decision allowing access to property to conduct an "on-site work analysis." In fact, Plaintiffs cite only a few cases of any kind. Of those cases, *McDonald v. Kellogg Co.* is the only one arguably relevant. But the study for which Judge O'Hara permitted access in that case bears little resemblance to the "on-site work analysis" Plaintiffs are seeking. *McDonald* involved a simple time-and-motion study where every component involved something expressly allowed by Rule 34(a)(2). The expert planned to inspect the workplace and measure the time involved in walking from one location to another. The only interactions with employees would be handing them reader cards that activated passive sensors the expert installed, and most of those employees were plaintiffs in the case. Even then, the visit was limited to two days and the order included other protections of the defendant. The study involved in *McDonald*

was far less intrusive and far more defined than what Plaintiffs are seeking here. Indeed, no court of which BNSF is aware has ever allowed the type of access and mandated participation by the defendant of the type Plaintiffs request.[9]

In sum, most components of Plaintiffs' proposed "on-site work analysis" are impermissible under the rule. Because Plaintiffs' request as written is for access to BNSF's facility for the sole purpose of conducting that analysis, the request is not proper under the rule. Accordingly, the Court should deny the motion to compel, which would not prohibit Plaintiffs from serving a request for any aspects of the "on-site work analysis" they believe are independently permissible.[10]

## D.   Viewing the Various Aspects of the Request Individually, the Court Should Deny the Motion.

The Court should deny the motion to compel because the sole stated purpose of the request for entry is impermissible. But the Court should reach the same result even if it views the request as distinct activities: the Court should determine that the "burdens and dangers" that would accompany each aspect of the request viewed separately outweigh the potential benefits. *See Lykins*, 2011 WL 6337631, *5.

---

[9] In a decision not cited by Plaintiffs, a judge allowed an ergonomic expert to inspect a warehouse to determine if accommodations for a plaintiff's disability were feasible. *See Curry v. Allan S. Goodman, Inc.*, 2003 WL 22305161, at *1 (D. Conn. May 22, 2003). That case too involved a straightforward visit involving observation of work activities, not the interactive type of visit Plaintiffs have requested. Indeed, the judge there ordered that "[t]he visit shall be limited to measurements and observations and is not to be treated as a hybrid visit/deposition."

[10] Even if the Court views Plaintiffs' request for an "on-site work analysis" as within the rule, for the same reasons just explained, it should hold that the request as a whole is impermissible because the burdens and dangers that would accompany the "on-site work analysis" outweigh the degree to which that analysis, as proposed by Plaintiffs, will aid in the search for the truth. *See Lykins*, 2011 WL 6337631, *5.

In viewing each aspect of the request separately, the Court should as an initial matter reject each individual item that is outside the scope of the rule as outlined above. That is, the Court should reject (1) the request to interview BNSF personnel, (2) any requests that BNSF arrange for the performance of certain job tasks or otherwise provide demonstrations of work activities, and (3) the request to allow Duty to use BNSF equipment and tools to attempt to demonstrate his claimed abilities. Before reaching the balancing test required under the rule, in other words, the Court can and should reject the request to engage in those specific activities as not within the rule.

### 1.      Relevance is marginal.

The relevance of Plaintiffs' proposed entry to a claim or defense in this action is not a foregone conclusion as Plaintiffs suggest. Plaintiffs are not seeking simply to observe certain operations. They want multiple unidentified experts to view those operations and take measurements and they want Kent Duty to attempt to perform certain job tasks. *See* Joint Motion at 6. The goal apparently is to have experts disagree with Dr. Jarrard's determination that Duty was not qualified. *See* Joint Motion at 6. That approach misunderstands the relevant issues when an employer has made a safety-based disqualification decision. It is not enough that an expert witness willing to disagree with BNSF's determination can be rounded up. The issue is whether BNSF relied on reasonable medical judgment in making its determination; simply claiming that the judgment is "wrong" on the basis of contrary expert testimony does not suffice or even relate to the relevant issue. *See Hickman v. Exxon Mobil*, 2012 WL 9100358, *9 (S.D. Tex. Sept. 27, 2012) (plaintiff could not establish that she was qualified because

employer's decision that she could not safely perform her job "was based on a reasonable medical judgment and best available objective evidence and reflected an individualized assessment of [the plaintiff's] abilities"; differing opinions among experts about the plaintiff's abilities could not show that employer "acted unreasonably when making its individualized determination . . . ."), *aff'd*, ___ Fed. Appx. ____, 2013 WL 5074734, *1 (5th Cir. Sept. 16, 2013); *see also Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 86 (2002); *Bragdon v. Abbott*, 524 U.S. 624, 649-51 (1998); *Wurzel v. Whirlpool Corp.*, 2012 WL 1449683, *13 (6th Cir. April 27, 2012).  Consequently, even though the LMIT shop and the job duties of Locomotive Electricians obviously have a bearing on the case, Plaintiffs' apparent approach will not provide them with information relevant to "any party's claim or defense."  Fed. R. Civ. P. 26(b)(1) (requiring a showing of good cause to obtain discovery of facts relevant only to the subject matter of the action).

There also are significant relevance problems with the request to allow Duty to attempt to demonstrate tasks for his expert using BNSF's locomotives, tools, and other equipment.  The approach rests on the faulty premise that Duty's ability to climb <u>just once</u> onto and off of a locomotive without falling or to use a tool properly and without injury <u>just once</u> proves his qualification for a job in which, during a normal and expected multi-year job tenure, he would be performing those tasks repetitively, often, and in widely varying conditions and circumstances.  Even if Duty could perform once some of the necessary tasks in a controlled, observed test, that fact is not evidence that he is physically able to perform them consistently, reliably, and safely over time.  In other words, having someone run through tasks once is not predictive of a physical ability to

safely perform those tasks on a day-to-day basis, especially over the course of a planned career.[11]

Whether or not the activities are relevant, however, the other considerations support denying Plaintiffs' request.[12]

## 2. Allowing Duty to attempt a demonstration.

There are other problems with the request to permit Duty to attempt to demonstrate tasks for his experts using BNSF's locomotives, tools, and other equipment. First, even if Duty had been hired he would have undergone extensive safety training before being allowed to work.  *Reppond Decl.* ¶ 9.  The initial training on safety alone is five full days as part of a seven-week new-hire "on-boarding" process.  Even after the safety training Duty would not have been released into the shop to work on his own but would "shadow" an experienced Locomotive Electrician.  *Id.*  Yet Plaintiffs propose to let Duty jump in and attempt to perform various tasks on BNSF's locomotives.  The absence of five days of safety training presents a serious safety concern.

Second, had Duty been hired he would have undergone extensive training on the job duties before beginning work.  *Id.* ¶ 9.  There is a steep learning curve for new employees inexperienced in working on locomotives.  *Id.* ¶ 10.  Even employees who

---

[11] It also is questionable whether Duty's abilities in late 2013 are probative of his abilities in late 2008 when BNSF made the challenged decision.

[12] Plaintiffs also suggest that their unidentified experts will "validate" whether "what BNSF claims to be essential job functions" are essential.  Joint Motion at 6.  That statement is baffling given that EEOC's own regulations do not suggest a need for — or the usefulness of — an expert evaluation of whether a function is essential and in fact state that the first type of evidence to be considered is "[t]he employer's judgment as to which functions are essential."  29 C.F.R. 1630.2(n).

excel in their previous electrical-related positions often have significant difficulty adjusting to working on locomotives. *Id.* It is unrealistic to expect that Duty would somehow automatically have the knowledge base to attempt to perform Locomotive Electrician tasks without training. Someone would need to explain and demonstrate the work for him. But the rules do not obligate BNSF to train Duty simply so that he can use BNSF's equipment to conduct a test not of that equipment but of his own abilities.

Third, although Plaintiffs have not explained the proposed logistics of Duty working on BNSF's equipment, they do clearly envision him working on a locomotive in the LMIT shop. That approach necessarily would delay the locomotive (or multiple locomotives given that various models are in use) from returning to service while Duty worked on it. The LMIT shop is a high-volume shop, with between 18 and 30 locomotives arriving and departing every day. *Id.* ¶ 11. The goal is to return every locomotive to service as quickly as possible *Id.* It is rare for a locomotive to be in the shop for more than 96 hours. *Id.* There are no "extra" locomotives available at the shop for uses such as what Plaintiffs are proposing. *Id.* Especially given the wide variety of tasks that Locomotive Electricians perform, allowing Duty to engage in hands-on demonstrations would seriously impede the goal of returning locomotives to service as soon as possible. *Id.* The disruption would be magnified because Duty is not a trained BNSF Locomotive Electrician. After he performed work on any locomotive, BNSF would have to "undo" whatever he did, have the work performed by a trained Locomotive Electrician and have that work inspected before putting the locomotive back in service. *Id.*

Fourth, the suggestion that Duty perform work on BNSF's locomotives also could run afoul of BNSF's collective bargaining agreement with the union representing Locomotive Electricians. Only union-member BNSF employees can perform electrical work on a BNSF locomotive. Allowing Mr. Duty to perform such work would at least potentially, if not likely, result in a grievance by a union member employee.

Finally, the Court should be aware that allowing what Plaintiffs are suggesting overlaps with a merits dispute in the case. Plaintiffs object that BNSF did not allow Duty to attempt to prove his ability to perform the essential functions of the position before deciding not to hire him. *See* Duty Amended Complaint ¶ 31; EEOC Complaint ¶ 8.a.11.; Joint Motion at 3. They are wrong that the ADA imposes such a requirement in the post-offer medical-review phase or otherwise.[13] Such a requirement also would be unworkable for an employer of any significant size, and unhelpful in any event because of the limited predictive value of a one-time run through of tasks as opposed to the nuanced direct-threat analysis the linchpin of which is reasonable medical judgment. *See* 29 C.F.R. § 1630.2(r); *see also Hickman*, 2012 WL 9100358 at *7-*9. It also would be unsafe. *Jarrard Depo.* at 162-64. The Court should not allow Plaintiffs to use a discovery mechanism to impose on BNSF an element of the hiring process that the

---

[13] Plaintiffs' suggest that such an obligation exists in their paragraph discussing "the post-offer medical evaluation process." *See* Joint Motion at 3. But the portion of the interpretive guidelines Plaintiffs cite concern requests that an employer may make <u>before</u> extending a conditional offer to an applicant, not during the post-offer medical evaluation process. *See* 29 C.F.R. Appx. § 1630.14(a). In any event, the type of pre-offer demonstration referenced in the interpretive guidelines is entirely at the employer's discretion, as the term "may" suggests. The point of that section is to tell an employer what it can do without running afoul of the limitations on pre-offer medical inquiries and examinations. *Id.*

parties are disputing as part of the merits of the case and that BNSF firmly believes is not required by the ADA.

For all of those reasons, the Court should deny the aspect of Plaintiffs' request that would permit Duty to use BNSF's shop, equipment, tools, and personnel to attempt to demonstrate his claimed ability to perform the essential functions of the position.[14]

### 3.      Observing tasks being performed.

To the extent Plaintiffs meant to request to observe Locomotive Electricians performing various tasks in the ordinary course of their work instead of through orchestrated demonstrations that are not required for the reasons stated above, that request too should be rejected.  The work is too unpredictable and varying to know in advance what electrical work will be performed on a given day.  *Reppond Decl.* ¶¶ 3-4. Management does not know generally until after a locomotive arrives at the Argentine shop for maintenance or repairs what electrical issues exist or what electrical components need to be serviced.  *Id.* ¶ 3.  An observer could stand in the shop for months and not see all of the tasks a Locomotive Electrician must perform.  *Id.* ¶ 6.  The work Plaintiffs want to observe is not a static, repetitive task but instead the performance of dynamic work by skilled employees over time, in varying locations, and in varying circumstances.  The request to observe particular tasks is not practicable given the nature of the particular job.

---

[14] It is unclear whether Plaintiffs have made any effort to determine other approaches to gaining access to locomotives on which Duty can attempt demonstrations, including through a locomotive manufacturer or leasing company.  *See In re Air Crash Disaster*, 1991 WL 147365 at *3 (pointing to such an approach as a less burdensome alternative to using the defendant's equipment).

There also are significant potential safety risks posed by having a group of individuals visit the LMIT shop for observation or other purposes. *Id.* ¶ 7. The shop is a large area filled with numerous pieces of heavy moving equipment, and special care must be taken at all times. *Id.* There are areas of the shop that can be viewed by persons wearing appropriate personal protective equipment and after they have received safety instructions. *Id.* In order to closely view the work of a Locomotive Electrician in the way Plaintiffs appear to desire, however, the person or group observing would have to go into areas of the shop that would not be safe for a person who has not had full safety training. *Id.* The LMIT shop can be an unforgiving work environment for those untrained or who do not comply with safety instructions. *Id.* Serious and even life-threatening injuries can occur as a result of lack of training or noncompliance with safety rules and instructions. *Id.*[15]

There are other problems as well. Some areas that would need to be accessed to view the work of a Locomotive Electrician are not feasibly accessible by multiple people. *Id.* ¶ 8. For example, the "pit" where Locomotive Electricians work on the underside of a locomotive is a long but narrow area with a low height clearance. *Id.* There is not room for a group of people to view the particular components of a locomotive that a Locomotive Electrician working in the pit is manipulating. *Id.* The components will be located overhead, and the Locomotive Electrician will be working on a stool. *Id.* The pit

---

[15] Although Plaintiffs have said that they would sign a release of claims in connection with any visit, and the Court should require them to do so if it allows any visit, their willingness to do so does not eliminate the safety concerns BNSF has and should not be viewed as a reason to disregard those concerns.

is too narrow to hold a group of people crowded around the Locomotive Electrician. *Id.*

As another example, some of the work of a Locomotive Electrician is performed on top

of the locomotive (e.g., work on cooling fans, grids, and air conditioning system). *Id.*

When working in that location the Locomotive Electrician must utilize a fall-protection

device. *Id.* Only one person can be connected to a fall-protection lanyard at one time,

and anyone connected is required to have gone through fall protection training. *Id.*

Therefore, a group of people could not closely observe a Locomotive Electrician

performing tasks in the ordinary course of their work on the top of a locomotive without

exposing them to fall risks. *Id.*

The above points also demonstrate why the visit — as presently articulated by

Plaintiffs — would be disruptive. The unpredictability of the work would require them to

be present for days or weeks on end, necessarily causing a greater disruption than that

involved in the short visits courts typically have approved. Safety issues magnify the

problem because BNSF personnel would necessarily be taking time to provide safety

instructions and monitor the group for safety reasons. *Id.* ¶ 7.[16]

Another problem with the requested observation is that it is cumulative of access

and information previously provided. During the EEOC investigation phase of this case,

the EEOC investigator was allowed to visit the LMIT and was provided a demonstration

---

[16] A related issue concerns the desire to photograph or take video in the shop. To the extent Plaintiffs would plan to include any individual in the photograph or video, they should not be allowed to do so without BNSF first securing the person's consent.

of a small number of the job functions of a Locomotive Electrician.[17]  *See* Exhibit H. Having already provided EEOC with access to its shop, BNSF should not have to do so again in the same litigation.  Moreover, a year after the visit, EEOC's investigator wrote to BNSF stating that his notes from the visit were inadequate and that he was requesting either another visit or that BNSF provide a video recording of certain job tasks.  *See* Ex. H.  BNSF chose the latter option, preparing a video showing some tasks expressly for the purpose of providing the video to EEOC.  *See* Klug Depo. at 31-32 (excerpts attached as Exhibit I).  That is the video referred to in item 1 of Plaintiffs' request for entry on premises.  Further, Plaintiffs plan to depose the individual who appeared in that video. Yet in item 1 of their request, Plaintiffs ask to see those same tasks under the guise of a Rule 34(a)(2) inspection.  That aspect of their request is the very definition of cumulative. BNSF does not suggest that Plaintiffs have already seen everything they now seek to view.  But the fact that BNSF has already provided access and a video is another factor that weighs against granting Plaintiffs' current request, especially given the special nature of a request to enter an opposing party's property.

4.    **"Access" to climbing mechanisms and tools.**

In items 4 and 5 of the request for entry on premises, Plaintiffs seek "access" to ladders and other climbing mechanisms and to tools or other equipment that are representative samples of those BNSF contends Duty is unable to use.  To the extent the "access" Plaintiffs seeks is for Duty to attempt to climb any mechanisms or use tools,

---

[17] That BNSF allowed such a visit does not diminish its arguments here.  The EEOC frequently conducts onsite visits during the investigation phase, and the scope of the visit was much narrower than what Plaintiffs are seeking in their motion.

BNSF asks the Court to deny the request for the reasons stated above. To the extent Plaintiffs want their experts to have access to tools for the purpose of photographing or measuring them, they should first identify those tools from the lists of BNSF has provided.[18] As to climbing mechanisms, Plaintiffs already have video and photographs of climbing mechanisms typically used by a Locomotive Electrician and have used the photographs in depositions. Their request thus is cumulative. If they believe they need more, there may be aspects of items 4 and 5 that BNSF could agree to. But Plaintiffs first need to serve proper requests that identify what exactly they want to "access" and what they want to do upon having such "access." As the property owner, BNSF is entitled to that level of specificity and should not have to anticipate all of the possibilities in responding to a motion to compel.

### 5.    Plaintiffs' arguments about their claimed need for the entry on BNSF's premises are flawed.

Plaintiffs' argument that they need the requested "on-site work analysis" and related activities to meet their burden of demonstrating that Duty is a "qualified individual" under the ADA is mistaken. The fact that there has been no ADA decision allowing or even discussing the extensive activities Plaintiffs are requesting to engage in should itself raise a red flag above that argument. It is true that Plaintiffs would at trial have to prove that Duty is a qualified individual, meaning that he can safely and reliably perform the essential functions of the job he sought with or without reasonable

---

[18] Again, if Plaintiffs have a problem with the information BNSF has provided about tools they must raise that through the ordinary process and not make an end-run around that process by seeking to integrate an interrogatory or deposition into an inspection of premises.

accommodation.  But for over 20 years plaintiffs and EEOC have been asserting ADA claims and proving them without, it appears from BNSF's research, ever finding the need to ask for the sort of wide-reaching access Plaintiffs seek here.  Plaintiffs' suggestion that they have no other way to prove their case is unsupported and wrong.

Moreover, both Plaintiffs have filed complaints in which they specifically plead that Duty is a qualified individual.  *See* Duty Amended Compl. ¶¶ 12, 30; EEOC Compl. ¶ 8.a.4.  They therefore presumably already have information that they believe supports their allegations.  In fact, on the question of Duty's qualifications they point specifically to his work in the "industrial maintenance field" for 17 years and assert that his climbing ladders and handling tools in that setting alone means he is qualified for the Locomotive Electrician job.  *See* Duty Amended Compl. ¶¶ 12, 30; EEOC Compl. ¶ 8.a.4.

Finally, although it is not BNSF's role to suggest experts to Plaintiffs, it seems that the concern underlying many of their desired activities — at least the request to observe various activities and tools — could be handled through expert selection.  If their approach is to try to have someone disagree with BNSF's medically based determination that Duty's undisputed lack of grip strength in his right hand renders him unqualified for the Locomotive Electrician position, they should find an expert who already knows about the job rather than use BNSF's property, equipment, and tools to educate someone.  In a medical-malpractice case, the litigants choose as experts physicians with the specialty appropriate for the issues in the case.  They do not choose nonqualified experts and then

seek to have those experts camp out in an operating room or other medical setting to observe surgeries or other procedures for days on end to learn how they are performed.[19]

In sum, the suggestion that Plaintiffs' need the requested entry onto BNSF's premises to satisfy their burden of proving qualification is incorrect. Even if it were correct, however, the existence of a need does not permit allowing discovery that is not permitted by the rules.

### 6.   The Court should deny the requested entry on premises.

For all the reasons outlined above, even if the components of Plaintiffs' proposed "on-site work analysis" are viewed as separate requests, the Court should hold that, as written, the dangers and burdens of allowing the requested activities are significant and outweigh any need by Plaintiffs for the activities, and thus the balancing required under Rule 34(a)(2) points toward denying the motion.

In addition to or alternatively, the same problems with Plaintiffs' request that BNSF outlines above also support denying the motion to compel under two of the Rule 26(b)(2)(C) provisions: "'(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . .'" or "'(iii) the burden or expense of the proposed discovery outweighs its likely benefit.'"   *See Lykins*, 2011 WL 6337631, *5 (quoting Fed. R. Civ. P. 26(b)(2)(C)).   For all the reasons stated above, the Court can and should invoke those provisions to deny the requested entry on BNSF's premises — whether viewed as

---

[19] Given the swarms of persons offering their expertise for pay to litigants, Plaintiffs' apparent inability to locate an expert already knowledgeable about locomotive repair who is also willing to challenge Dr. Jarrard's medical judgment in fact speaks volumes.

solely for the purpose of conducting an "on-site work analysis" or viewed separately by each component of that analysis.  Either way, what Plaintiffs are asking for is a highly intrusive, burdensome, partially cumulative, and ultimately disproportionate process that is unsupported by any court decision and should be rejected.

**E.      Proposed Limitations and Conditions of Any Entry.**

Although BNSF firmly believes that the Court should deny the motion to compel on one or more of the grounds stated above, if the Court allows any type of inspection, BNSF asks it to permit no greater access than that under the following terms and conditions:

- A visit by only one attorney for each Plaintiff, one expert, and a camera operator, none of whom is Kent Duty;

- A duration of no more than three consecutive hours on one day;

- The persons attending would be able to observe Locomotive Electrician work being performed in the ordinary course;

- The persons attending must wear personal protective equipment as instructed by BNSF, to be obtained at Plaintiffs' expense;

- The persons attending must sign before the scheduled date a release of claims in a form satisfactory to BNSF;

- At all times the persons attending must stay in designated locations and follow all BNSF safety instructions;

- The persons attending may not ask questions of any BNSF employees;

- The persons attending may take photographs and video recordings so long as they do not take photographs or video of any person who does not consent and so long as they agree to produce copies of such photographs and video to BNSF;

BNSF contends that a visit on those terms and conditions is more than Plaintiffs are entitled to and is the most the Court should permit if it permits a visit notwithstanding BNSF's request to deny the motion. The above terms and conditions provide Plaintiffs with a reasonable amount of information without the highly intrusive and disproportionate burdens of their request as currently written.

## IV.   CONCLUSION

BNSF asks the Court to deny Plaintiffs' joint motion to compel or alternatively to limit the permissible access to that stated in the terms proposed by BNSF above.

Date: November 15, 2013.

Respectfully submitted,

LATHROP & GAGE LLP

By: /s/ David C. Vogel
        David C. Vogel
            Ks. Bar No. 18129
        2345 Grand Blvd., Suite 2600
        Kansas City, Missouri 64108
        Telephone: (816) 460-5611
        Telecopier: (816) 292-2001

        OF COUNSEL
        Bryan P. Neal
            Texas Bar No. 00788106
        Stephen F. Fink
            Texas Bar No. 07013500
        THOMPSON & KNIGHT LLP
        One Arts Plaza
        1722 Routh Street, Suite 1500
        Dallas, Texas 75201
        Telephone: (214) 969-1700
        Telecopier: (214) 969-1751

        ATTORNEYS FOR DEFENDANT
        BNSF RAILWAY COMPANY

30

## CERTIFICATE OF SERVICE

I certify that on November 15, 2013, this pleading was served by electronic transmission on all counsel of record as follows:

Anne E. Gusewelle, Esq.
Equal Employment Opportunity Commission
Kansas City Area Office
4th and State Avenue, 9th Floor
Kansas City, Kansas 66010
anne.gusewelle@eeoc.gov
Attorneys for Plaintiff

Marie L. Gockel, Esq.
Bratcher Gockel & Kingston, L.C.
1935 City Center Square
1100 Main Street
P.O. Box 26156
Kansas City, Missouri 64196-6156
marie@bgklawyers.com
Attorneys for Plaintiff-Intervenor


By:    /s/ David C. Vogel
       David C. Vogel


031432 000487 8248297.2