IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| KENT DUTY, | ) Case No.: 2:12-CV-02634-JWL-KGG ) |
| Plaintiff-Intervenor, v. | ) ) ) |
| BNSF RAILWAY COMPANY, | ) ) |
| Defendant. | ) ) |

**ORDER DENYING ON PLAINTIFFS' MOTION TO COMPEL
DEFENDANT TO PERMIT INSPECTION OF PREMISES**

This is an employment discrimination case brought under the Americans with Disabilities Act. Plaintiff-Intervenor Kent Duty ("Mr. Duty") applied for a position with Defendant railroad as a locomotive electrician. Mr. Duty was hired subject to a medical examination. He was then denied the position after a medical examination by Defendant opined that because of a physical impairment in one hand he is unable to perform essential functions of the job. The specific essential functions apparently at issue are (1) the inability to safely climb ladders and other climbing apparatuses using the "three point contact" method the defendant contends is required by OSHA and (2) the inability to handle certain tools which

safety or effectiveness requires be used with two hands.

Now before the Court is Plaintiffs' Joint Motion to Compel Defendant to Permit Inspection of Premises. (Doc. 92.) Plaintiff EEOC and Plaintiff-Intervenor filed a request under Federal Rule of Civil Procedure 34 to inspect the premises of the BNSF Argentine facility where the job at issue would have been performed. The request asks that the facility be available to Plaintiffs, their attorneys, agents and experts "for the purpose of the coordination of an on-site work analysis." Specifically, Plaintiffs requested access for the "purposes of observation, measurement, recording and photographing" of the matters listed below:

1. Observation of such persons who regularly perform the job position of Electrician Diesel Engine – Locomotive, in the performance of representative job tasks for such position, including without limitation the observation of person[s] who regularly perform any job tasks that Defendant claims Kent Duty is unable to perform for the position of Electrical Diesel Engine – Locomotive, and including without limitation those job tasks contained in the video that was provided to the EEOC by Defendant BNSF, marked as Duty/BNSF 0000752. The person performing the on-site analysis is requested to be allowed to ask appropriate questions related to the performance of the job position of Electrical Diesel Engine – Locomotive, if deemed to be of assistance to the performance of the workplace analysis.

2. Observation of such persons who regularly perform the job position of Electrician Diesel Engine – Locomotive, in the performance of the job functions of such position that Defendant contends are all of the essential functions of such position. The person performing the on-site analysis is requested to be allowed to ask appropriate questions related to the performance of the job position of Electrician Diesel Engine – Locomotive that Defendant contends are all of the essential functions of such position, if deemed to be of assistance to the performance of

the worksite analysis;

3. Observation by the person performing the work site analysis of Kent Duty at the work-site, allowing Mr. Duty to demonstrate the performance of such representative job tasks deemed appropriate by the person performing the worksite analysis, for the position of Electrician Diesel Engine – Locomotive, including without limitation any job tasks that Defendant claims Kent Duty is unable to perform, including without limitation those job tasks contained in the video recording that was provided to the EEOC by Defendant BNSF, marked as Duty/BNSF 0000752, and including without limitation any job tasks claimed by Defendant to be the essential functions of such position;

4. Access to such ladders, parts of the locomotives or climbing mechanisms that are representative example(s) of the ladders, parts of the locomotives or other climbing mechanisms that are required to be climbed while performing the position of Electrician Diesel Engine – Locomotive and that are representative of the type of ladders, parts of the locomotives or other climbing mechanisms that Defendant claims that Kent Duty is unable to climb using the three point contact rule; and

5. Access to such tools or other equipment that are representative example(s) of the tools or other equipment that Defendant claims that are required to be grasped firmly with two hands while performing the position of Electrician Diesel Engine – Locomotive and that are representative of the type of tools or other equipment that Defendant claims that Kent Duty is unable to use.

Defendant objects to the request generally, and to several aspects of the request specifically. Defendant claims the request is unduly intrusive and burdensome, and that some aspects of the request are beyond the proper scope of Rule 34. Plaintiffs claim that the requested inspection is necessary to allow its experts to opine whether (1) the functions which the defendant claims Mr. Duty

cannot perform are "essential" to the job, and (2) whether Mr. Duty could perform the functions with or without reasonable accommodation. [1]

The Court agrees that some aspects of the request are beyond the proper scope of a Rule 34 inspection.  However, some inspection of the premises in this case is relevant to the issues.  Therefore, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' motion.

Plaintiffs are permitted to conduct discovery regarding any "nonprivileged matter that is relevant to any party's claim or defense."  Fed.R.Civ.P. 26(b)(1).  Under Rule 34, a party may serve a request to permit entry onto property possessed or controlled by the responding party so the requesting party may "inspect, measure, survey, photograph, test or sample the property or any designated object or operation on it."  If the parties disagree concerning whether the request is appropriate, the Court must "balance the respective interests by weighing 'the degree to which the proposed inspection will aid in the search for truth' against the 'burdens and dangers created by the inspection.'" [2]

Defendant objects that the requested inspection "is a hybrid, multi-faceted

---

[1] These are mandatory predicates for the qualification of Mr. Duty under the Americans with Disabilities Act.

[2] *Lykins v. CertainTeed Corp.*, No. 11-2133-JTM-DJW, 2011 WL 633763, at *5 (D. Kan. 2011), *citing* **Morris v. Cabelas**, No. 10-2559-EFM-GLR, 2011 WL 2516904, at *1 (D. Kan. June 23, 2011) (*citing* **Welzel v. Bernstein**, 233 F.R.D. 185, 186 (D.D.C. 2005).

procedure that involves some aspects of activities described in the rule but also numerous activities that are not permitted by the rule." Conceding that some aspects of the request fall within the rule, defendant argues that some aspects are not, including "(1) some undisclosed but necessarily collaborative process for BNSF to identify, describe, and facilitate the performance of certain tasks and identify particular work operations, tools, and equipment, (2) BNSF personnel answering questions during the analysis, and (3) Kent Duty himself using BNSF equipment and tools to attempt to demonstrate his own performance of certain tasks for his potential experts, presumably after being shown by a paid BNSF employee how to perform such tasks." (Doc. 99.) The Court agrees that these elements of the request are improper.

Plaintiffs are not entitled to use a Rule 34 inspection as an alternative to depositions or written discovery. Plaintiffs wish to ask questions of defendant's workers on site. From the discussion in the briefs it is clear these are not to be simply administrative questions to facilitate the inspection, but substantive questions concerning the frequency and necessity of tasks being performed, and other questions to determine whether an observed task is or is not essential, or could be accommodated. This activity could substantially disrupt the workplace, and is essentially a request that the defendant facilitate roving depositions of the employees. The Court agrees with defendant that compelling this procedure

outside the protections of the normal deposition process is beyond the scope of Rule 34.[3]

Similarly, the request contains a remarkable element, requiring the Defendant to designate (presumably with the camera rolling) which of the tasks being observed (and which tools, equipment and climbing mechanisms) are relied upon essential functions which Defendant claims are beyond Mr. Duty's ability. There is no provision for this sort of mixed Rule 34-39(b)(6) procedure, taken without the formality or protections of a deposition. Providing access to the facility for an inspection under Rule 34 does not include requiring Defendant to point out to Plaintiffs what to inspect or allow an alternate process to force Defendant to clarify its contentions.

Similarly, the court is unclear what sort of assistance Plaintiffs expect in requiring Defendant to provide a viewing of "representative tasks" "at issue in this case." Are Plaintiffs asking that Defendant ensure that any task it considers at issue in this is performed during the inspection? If so, this is more than a mere inspection. In briefing, Plaintiffs deny that they are requesting Defendant "devise" testing, insisting that they are only requesting to "observe or test" work practices. The Court reads Plaintiffs' Rule 34 request more broadly.

---

[3] ***Belcher v. Bassett Furniture Industries, Inc.***, 588 F.2d 904 (4th Cir. 1978). This is not to say that employees may not be interviewed (or deposed), only that Plaintiffs are not entitled to force interviews as part of a Rule 34 inspection.

Neither may Plaintiffs use the Rule 34 procedure to require Defendant to provide a set and props for a video-taped demonstration or test of Mr. Duty's abilities. Under the request, upon designation by Defendant of, for example, a ladder they believe Mr. Duty cannot safely climb, Plaintiffs apparently wish to then film Mr. Duty climbing the ladder to prove them wrong. Such a demonstration is beyond the sort of "testing" contemplated by the rule, would be potentially unsafe and would, in any event, not result in relevant discovery. Furthermore, Plaintiffs have failed to explain why any such evaluation of Mr. Duty could not be performed elsewhere, including a demonstration of Mr. Duty's use of specified tools. The Court agrees with Defendant that the on-site testing of an "operation" contemplated by Rule 34 does not include the testing of Mr. Duty.

Having thus rejected certain elements of the Rule 34 request, the Court agrees as a general proposition that an inspection of the workplace to help Plaintiffs' experts determine whether a claimed work function is "essential," and whether Mr. Duty could perform the function with or without reasonable accommodation, could be proper. In this case, a proper inspection includes a setting in which designated Plaintiffs' representatives could observe the performance of the job of electrician, over a reasonable period of time, and record the performance of the work by video tape. Defendant could reasonably be compelled to endure some inconvenience in this regard. Even allowing Plaintiffs'

expert an opportunity to measure ladders and inspect safety devices could be accommodated.

However, this sort of inspection is far less than the request in this case, and it is not clear from Plaintiffs' briefing in this case that they would consider this more limited inspection helpful. There seems little point in ordering an inspection the Court considers within the rules but which Plaintiffs do not believe would be helpful. However, because some observation of the workplace would be plainly appropriate in this case, the Court will grant the motion for an inspection under specific limitations. Plaintiffs may then make their own judgment whether completing the inspection under these limitation is worthwhile.

Therefore, the Court grants Plaintiffs' motion to perform a Rule 34 Inspection of Defendant's named premises under the following restrictions:

1. The inspection is to be completed within 45 days of this Order.

2. Participants may include Plaintiff Kent Duty, one attorney for each Plaintiff, one expert, and one camera operator. The participants will observe work being performed from a designated area, except for some reasonable closer access by the expert upon request for the purpose of taking measurements.

3. The inspection may be performed over two days, to be determined by the parties, lasting no more than six (6) hours each day.

4. The persons attending would be able to observe Locomotive Electrician work being performed in the ordinary course of their duties.

5. The persons attending must comply with safety requirements of BNSF and wear personal protective equipment as instructed, at Plaintiffs' expense.

6. The persons attending must sign a release of claims in a form satisfactory to BNSF.[4]

7. At all times the persons attending must stay in designated locations and follow all BNSF safety instructions.

8. The persons attending may not ask substantive (as opposed to administrative) questions of BNSF employees.

9. The persons attending may take photographs and video recordings so long as they do not take photographs or video of any person who does not consent and so long as they agree to produce copies of such photographs and video to BNSF.

10. Defendant will accommodate reasonable requests from Plaintiff's expert to approach the work area to make measurements of the work area and climbing devices.

11. The parties shall consult further to agree to such other conditions and accommodations are consistent with this Order.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 15th day of January, 2014.

                                            S/ KENNETH G. GALE
                                            KENNETH G. GALE
                                            United States Magistrate Judge

---

[4] The specific enumerated conditions here are largely taken from those proposed and counter-proposed by the parties. The requirement for signed releases is one the parties were in agreement upon. The Court would not necessarily have imposed this condition otherwise. *See White v. Union Pacific Railroad Company*, No. 09-1407-EFM-KGG (D. Kan. April 14, 2011).