## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| KENT DUTY, | ) <br> ) | Case No.12-02634-JWL-KGG |
| Plaintiff-Intervenor, | ) | |
| v. | ) <br> ) | |
| BNSF RAILWAY COMPANY, | ) <br> ) | |
| Defendant. | ) <br> ) | |
| _____ | ) | |

## <u>ORDER ON DEFENDANT'S MOTIONS TO COMPEL</u>

Now before the Court is Defendant's "Motion to Compel Responses to

Defendant's First Interrogatories and First Requests for Production of Documents"

from Plaintiff EEOC (Doc. 120). For the reasons set forth below, the Court

**GRANTS in part** and **DENIES in part** this motion.[1] Also before the Court is

Defendant's "Motion to Compel Deposition Testimony" from Samuel James, an

---

[1] Plaintiff has raised multiple objections and privileges to most of the discovery requests at issue. More than one of the objections and privileges may apply to a particular discovery request or document that has been withheld from production. To the extent an objection or assertion of privileges is overruled herein in regard to a specific discovery request, any responsive information shall be produced only to the extent it does not fall under the protection of another privilege raised by Plaintiff that the Court has sustained. While this may complicate the process of determining which documents are to be produced, this analytical approach was necessary for the Court to employ based on the manner in which these objections were grouped together in the underlying briefs.

investigator employed by the EEOC (Doc. 122).  For the reasons set forth below, the Court **DENIES** this motion in its entirety.

## BACKGROUND

This is an employment discrimination case brought under the Americans with Disabilities Act.  Plaintiff-Intervenor Kent Duty ("Mr. Duty") applied for a position with Defendant railroad as a locomotive electrician.  Mr. Duty was hired subject to a medical examination.  He was then denied the position after a medical examination by Defendant opined that he is unable to perform essential functions of the job because of a physical impairment in one of his hands.

Defendant has filed two motions to compel requesting the Court to order Plaintiff to provide supplemental discovery responses (Doc. 120) and to order EEOC investigator Samuel James to respond to certain deposition inquiries that he was instructed by counsel not to answer (Doc. 122).  Plaintiff has objected that providing the information at issue would implicate the deliberative process privilege, would improperly disclose materials regarding the EEOC's statutorily-required conciliation efforts, would require disclosure of information protected by the work-product doctrine, would improperly implicate communications and information protected by the common interest privilege, and would require disclosure of information protected by the attorney-client privilege.  (*See generally*

Doc. 135.)

Rather than discuss each discovery request or deposition inquiry individually, Defendant approached its motions to compel by addressing the various categories of objections raised by Plaintiff EEOC. The Court will, therefore, tailor its analysis accordingly.

## **<u>DISCUSSION</u>**

Fed.R.Civ.P. 26(b) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." As such, the requested information must be both nonprivileged and relevant to be discoverable.[2]

"'Discovery relevance is minimal relevance,' which means it is possible and reasonably calculated that the request will lead to the discovery of admissible evidence." ***Teichgraeber v. Memorial Union Corp. of Emporia State University***, 932 F.Supp. 1263, 1265 (D. Kan. 1996) (internal citation omitted). "Relevance is broadly construed at the discovery stage of the litigation and a request for

---

[2] Most of Plaintiff's objections relate to issues of privilege, although relevance is also implicated in the Court's decision.

discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." ***Smith v. MCI Telecommunications Corp.***, 137 F.R.D. 25, 27 (D.Kan.1991). Stated another way, "discovery should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action." ***Snowden By and Through Victor v. Connaught Lab.***, 137 F.R.D. 325, 341 (D.Kan.1991), appeal denied, 1991 WL 60514 (D.Kan. Mar. 29, 1991).

The scope of discovery is broad, but not unlimited. If the proponent has failed to specify how the information is relevant, the Court will not require the respondent to produce the evidence. ***Gheesling v. Chater***, 162 F.R.D. 649 (D. Kan. 1995).

## A. The Deliberative Process Privilege.

### 1. Discovery requests.

Plaintiff EEOC raises the deliberative process privilege in response to Defendant's Requests for Production Nos. 1-24, 31, and 32.[3] (*See generally* Doc. 121-1.) The "'deliberative process' privilege ... protects advice, recommendations, opinions and other material that is part of the deliberative decisionmaking

---

[3] The Court notes that Plaintiff has, without waiving this objection, produced non-privileged documents in response to all but one of these requests – R.F.P. No. 22, seeking documents relating to communications with Scott Woods, DSc, PT. (Doc. 121-1, at 12-13.)

processes of a government agency." ***Hass v. U.S. Air Force***, 848 F.Supp. 926, 930

(D. Kan. 1994) (citing ***Covington & Burling v. Food and Nutrition Service***, 744

F.Supp. 314, 318 (D.D.C.1990)).  In order for the privilege to apply, the documents

at issue must be predecisional; in other words, "they must have been prepared

before the agency's decision to which they relate."  *Id*. (internal citation omitted).

"Next, the documents must be sufficiently deliberative; that is, they must contain

recommendations or express opinions on legal or policy matters."  *Id*. (citing

***Nadler v. Department of Justice***, 955 F.2d 1479, 1491 (11th Cir.1992)).  "Purely

factual matters are not exempt, unless they are sufficiently intertwined with

deliberative matters."  *Id*. (citing ***Covington & Burling***, 744 F.Supp. at 319).

Of course, as a threshold matter, the information must also be shown to be

relevant.  Plaintiff EEOC argues that the information sought "has no relevance to

this action because this is a *de novo* proceeding on the merits of EEOC's

allegations of discrimination not an adjudication of the propriety of the agency's

investigation or determination."  (Doc. 135, at 6.)  Defendant argues, however, that

Plaintiff misunderstands its position.

> The issue is that by the very act of suing BNSF and
> prosecuting a case the agency made itself a party
> opponent subject to impeachment.  The very act of suing
> and prosecuting a case against BNSF is a representation
> to any jury that hears this case that EEOC's position on
> the merits is correct.   ...BNSF is entitled to challenge the

agency's claimed or perceived impartiality, expertise, and exercise of care to avoid an impermissible negative impression arising simply by virtue of the agency's role and the fact that it has sued BNSF.

(Doc. 142, at 5-6.)

A similar argument was made in the case of ***EEOC v. JBS USA, LLC***, by a Defendant moving to compel production of internal EEOC emails relating to the investigation of the Defendant as well as notes from the EEOC investigator. No. 10-2103-PAB-KLM, 2013 WL 5812478 (D. Colo. Oct. 29, 2013). In denying that motion to compel, the Magistrate Judge held that

> Defendant's explanation that the documents go to the 'credibility' of the EEOC's allegations sounds uncomfortably like a back-door attempt to evaluate the adequacy of the EEOC investigation, a subject which is simply off limits. *See, e.g.*, ***EEOC v. KECO Indus., Inc***., 748 F.2d 1097, 1100 (6th Cir.1984); ***EEOC v. Caterpillar, Inc.***, 409 F.3d 831, 832–33 (7th Cir. 2005) (holding '[n]o case actually holds that the scope of the EEOC's investigation is a justiciable issue in a suit by the EEOC'). In addition, Defendant offers no specific reason why the investigator's post-filing notes relating to the Charging Parties' attorneys could be relevant, and the Court perceives none.
>
> Second, to the extent that Defendant argues that the requested documents contain information about 'facts and witnesses ... and the process [the EEOC] used to investigate,' the Court is unconvinced. The EEOC's investigatory process is not relevant, for the reason cited above. Moreover, if these types of internal emails were routinely discoverable simply because they refer to facts and witnesses, the deliberative process privilege would

6

be eviscerated. ***EEOC v. Albertson's LLC***, No. 06–cv–01273–CMA–BNB, 2008 WL 4877046 at * 5 (D.Colo. Nov. 12, 2008) (holding that argument that litigant was entitled to discover what information EEOC obtained during its investigation prior to filing of lawsuit as opposed to what purported evidence it put forth after the filing of the lawsuit 'would eviscerate the deliberative process privilege.') (emphasis in original). 'A defendant always wants the benefit of the EEOC's analysis ..., but that alone is insufficient to overcome the important interests of the privilege, properly asserted.' *Id*.

      The deliberative process privilege 'shields documents reflecting advisory opinions, recommendations and deliberations compromising part of a process by which governmental decisions and policies are formulated.' ***Trentadue v. Integrity Comm***., 501 F.3d 1215, 1226 (10th Cir. 2007). The purpose of the privilege is to 'enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.' *Id*.

      The deliberative process privilege has been properly asserted here. In the context of an EEOC investigation, the deliberative process privilege may be invoked to protect from disclosure predecisional documents and other information which 'reveal the give and take of the consultive process' concerning the EEOC's investigation and its decisions regarding whether and how to pursue an enforcement action. ***EEOC v. Continental Airlines, Inc***., 395 F.Supp.2d 738, 741 (N.D. Ill. 2005).

2013 WL 5812478, at *1-2.

      The Requests for Production at issue specifically relate to the EEOC charging and investigatory process (Requests Nos. 1-11, 15, 16), communications with Plaintiff Duty prior to the issuance of his EEOC charge (Request No. 23, 24),

communications with BNSF employees (Requests Nos. 14, 17, 31, 32),

Defendant's defenses, statements, or contentions (Request No. 5-7), Plaintiff's

request for damages (Request No. 12, 13), and communications with individuals

who the Court surmises to be experts/consultants (Request Nos. 18, 19, 20, 21, 22).

(*See generally* Doc. 121-1, at 3-17.)  Given the stated subject matter of the

document requests at issue, the Court finds the above reasoning from ***EEOC v.***

***JBS USA***, *supra*, applying the deliberative process privilege to be sound.

Given the subject matter of these requests, the Court finds that Defendant's

stated desire to impeach the EEOC at trial is merely an inventive attempt to attack

the adequacy of the EEOC's investigation.  The Court sees no basis in the law to

allow Defendant to do this.  As such, Plaintiff's assertion of the deliberative

process privilege in regard to the discovery requests at issue is **SUSTAINED** and

this portion of Defendant's Motion to Compel (Doc. 120) is **DENIED**.

The Court notes that Request No. 20, and portions of Requests Nos. 21 and

22 are not deliberative in nature.  Request No. 20 seeks information regarding

"amounts paid by you" to medical, technical, or specialized consultants.  (Doc.

121-1, at 12.)  The Court finds that such documents, which only request

information on amounts paid, cannot implicate the deliberative process of the

EEOC.  The same is true of the portions of Requests Nos. 21 and 22 referencing

"any amounts paid to" Terry L. Cordray and Scott Woods, Dsc, PT. Even so, this information is only relevant as it relates to Plaintiff EEOC's deliberative process – and that process is protected from discovery. As such, the documents are irrelevant and will not be produced.

### 2. Deposition questions.

Plaintiff's counsel also instructed deponent Samuel James, an EEOC investigator, not to respond to various deposition inquiries on the basis of the deliberative process privilege. This is the subject of Defendant's other motion to compel. (Doc. 122.)

The deposition questions implicated relate to why the charge was moved from the KHRC to the EEOC (Doc. 123-1, at 3), why certain interviews never occurred (*id.*, at 4-7), the contents and meaning of redacted sentences included in interview notes the EEOC produced in redacted form (*id.*, at 8-9), conclusions regarding the function in Plaintiff Duty's fingers and sufficiency of work performed/tools used (*id.*, at 10-15), and conclusions regarding the EEOC's investigation and recommendations for the disposition of the charge (*id.*, at 16-19). The Court finds these deposition inquiries to be further attempts to glean information to attack the adequacy of the EEOC's investigation. The Court sees no basis in the law to allow Defendant to do this. As such, Plaintiff's assertion of the

deliberative process privilege in regard to these deposition inquiries is

**SUSTAINED** and this portion of Defendant's Motion to Compel Deposition

Testimony (Doc. 122) is **DENIED**.

**B.    Conciliation Materials.**

Plaintiff has raised the objection that Requests for Production Nos. 13, 15,

23-33, and Interrogatories Nos. 4, 10, and 11, in part, "call[s] for production of

documents protected by . . . federal law precluding disclosure of conciliation

materials (ADA incorporating Title VII 42 U.S.C. § 2000e-5(b)) . . . ." (*See*

*generally* Doc. 121-1, at 9-10, 13-17; Doc. 121-2, at 7, 11.)  This portion of Title

VII, which Congress made applicable to the Americans With Disabilities Act,

states:

> If the Commission determines after such investigation
> that there is reasonable cause to believe that the charge is
> true, the Commission shall endeavor to eliminate any
> such alleged unlawful employment practice by informal
> methods of conference, conciliation, and persuasion.
> Nothing said or done during and as a part of such
> informal endeavors may be made public by the
> Commission, its officers or employees, or used as
> evidence in a subsequent proceeding without the written
> consent of the persons concerned. Any person who
> makes public information in violation of this subsection
> shall be fined not more than $1,000 or imprisoned for not
> more than one year, or both.

42 U.S.C. § 2000e-5(b).

Citing the case of ***EEOC v. Associated Dry Goods Corp***., 449 U.S. 590, 101 S.Ct. 817, Defendant argues that as a party to an agency proceeding, it "is not a member of the 'public' for purposes of the prohibition" on disclosure of this information. (Doc. 121, at 12.) Plaintiff argues that Defendant is interpreting ***Associated Dry Goods*** too broadly and that, without Plaintiff Duty's consent, it cannot produce this information. (Doc. 135, at 16-17.)

The Court does not agree with Plaintiff. The language of ***Associated Dry Goods*** specifically addresses the portion of the statute forbidding public disclosure of any matters arising in informal conciliation "without the written consent of the persons concerned." 449 U.S. 590, 598, at n.13, 101 S.Ct. 817, 822, at n. 13 (citing § 2000e-5(b)). In that context, the Supreme Court held that "[t]his phrase suggests that the parties, the 'persons' whose consent would most obviously be necessary, are not members of the 'public' to whom disclosure is forbidden." *Id*., at n.13.

Plaintiff also argues that the information is irrelevant because documents it "previously disclosed in this matter are more than sufficient to establish that the Commission met its requirements for good faith conciliation under Tenth Circuit law." (Doc. 135, at 17.) This argument flies in the face of the very purpose of discovery. It is not for the producing party to pick and choose the information on a

relevant subject matter it wishes to disclose and then *sua sponte* determine that it has produced "sufficient" information on the issue.

Defendant has raised the issue that the EEOC did not meet its conciliation requirements. The Court notes that the lack of good faith efforts to conciliate is not an outright defense to liability, but rather a condition precedent to prosecuting the action. *See **EEOC v. Prudential Fed. Sav. & Loan Assoc.***, 763 F.2d 1166, 1169 (10th Cir. 1985) (noting the Court's failure to dismiss cases in which the EEOC failed to fulfill its duty to conciliate); ***EEOC v. BNSF***, No 07-734-D, 2008 WL 4845308, at *2, n.6 (W.D. Okla. June 23, 2008) (holding that the remedy for a failure by the EEOC to conciliate is "a stay of the case until conciliation efforts are completed, not dismissal of the case."). Further, the Tenth Circuit has been clear that district courts are not to "examine the details of the offers and counter-offers between the parties, nor impose its notions of what the agreement should provide" in deciding whether the EEOC has fulfilled its conciliation requirements. ***EEOC v. Zia Co.***, 582 F.2d 527, 533 (10th Cir. 1978). Even so, the issue of conciliation remains relevant to this lawsuit. *See id.* (holding that the EEOC may bring an action in federal court "[o]nly if conciliation proves to be impossible" after statutorily-mandated good faith efforts to conciliate); ***EEOC v. BNSF***, 2008 WL 4845308, at *2, n.6 (holding that it is appropriate to stay a case to remedy the

EEOC's failure to conciliate).

The Court, therefore, must determine whether the individual requests at issue are relevant to the issue of conciliation generally without seeking to improperly dissect the details of the conciliation, as such overly specific information becomes irrelevant. Plaintiff raised the conciliation materials objection that Requests for Production Nos. 13, 15, 23-33, and Interrogatories Nos. 4, 10, and 11. Each discovery request will be discussed in turn.

### 1.     Request No. 13.

This request seeks documents regarding the type and amount of damages and relief Plaintiff seeks "including but not limited to unpaid wages and overtime compensation on behalf of Duty, liquidated damages, punitive damages, attorney's fees, costs, expenses, pre-judgment and post-judgment interest, expert witness fees, and any other damages to which you claim you are entitled." (Doc. 121-1, at 9.) The Court fails to see how information responsive to this request could be considered protected conciliation materials. Even to the extent this information was discussed or analyzed during the conciliation process, information regarding the type and calculation of Plaintiff's damages is not *per se* protected conciliation material. Plaintiff's objection is **overruled** and Defendant's motion is **GRANTED** in regard to Request No. 13.

## 2. Request No. 15.

Request No. 15 seeks "[t]he entire, unredacted contents of your investigative file(s) related to EEOC Charge No. 28D-2009-00420." (Doc. 121-1, at 10.) While information contained in the investigative file might be privileged on other grounds,[4] the Court **overrules** Plaintiff's objection to producing any documents that where withheld from disclosure solely on the basis that they constitute conciliation materials, with the exception of specific offers and counter-offers, discussed in subsection 3, *infra*. Defendant's motion is **GRANTED** in regard to Request No. 15.

## 3. Requests Nos. 23-29.

Request No. 23 seeks documents "containing, reflecting, or referencing communications from you to Duty prior to the issuance in EEOC Charge No. 28D-2009-00420 of the Determination dated August 24, 2011" while Request No. 24 seeks such communications from Plaintiff Duty to the EEOC. (Doc. 121-1, at 13.) Request No. 25 seeks documents regarding "communications from you to Duty after the issuance in EEOC Charge No. 28D-2009-00420 of the

---

[4] The Court reiterates that more than one of the objections and privileges may apply to a particular discovery request or responsive document that has been withheld from production. To the extent an objection or assertion of privileges is overruled herein in regard to a specific discovery request, any responsive information shall be produced only to the extent it does not fall under the protection of another privilege raised by Plaintiff that the Court has sustained.

Determination dated August 24, 2011, but prior to your conclusion that

conciliation with respect to that charge had failed," while Request No. 26 seeks

such communications from Plaintiff Duty to the EEOC.  (Doc. 121-1, at 14.)

Request No. 27 asks for documents regarding "communications from you to

Duty in connection with the Conciliation Agreement you proposed on or about

August 24, 2011 in connection with EEOC Charge No. 28D-2009-004200," while

Request No. 28 seeks such communications from Plaintiff Duty to the EEOC.  (*Id*.,

at 14-15.)  Request No. 29 seeks "[a]ll documents that you contend demonstrate

satisfaction of your conciliation obligation with respect to EEOC Charge No.

28D-2009-00420."  (*Id*., at 15.)

The Court finds that such information may shed light on the issue of whether

the EEOC's conciliation efforts were in good faith, which is a condition precedent

to the EEOC bringing a lawsuit in its name.  Because Defendant is not a member of

the "public" to whom disclosure of these materials is prohibited, *see **Associated

Dry Goods***, *supra*, and because good faith conciliation efforts are a condition

precedent to suit, the Court finds that the documents at issue are generally

discoverable.

The Court previously stated, however, that it would be improper for it to

"examine the details of the offers and counter-offers between the parties, nor

impose its notions of what the agreement should provide" in deciding whether the EEOC has fulfilled its conciliation requirements. *Zia*, 582 F.2d at 533. Therefore, communications relating to conciliation offers and counter offers are irrelevant to any analysis the Court will make in this case. Plaintiff's objection is **sustained in part** and **overruled in part** while Defendant's motion is **GRANTED in part** and **DENIED in part** in regard to Requests Nos. 23-29. Documents or communications regarding conciliation offers and counter-offers are not to be produced. All other conciliation materials withheld by Plaintiff in response to these document requests, however, shall be produced.

      **4.    Request No. 30.**

      This request seeks "[a]ll documents you relied on in arriving at the payments requested in the Conciliation Agreement (section III, paragraphs B & C, "Charging Party Relief") you proposed on or about August 24, 2011 in connection with EEOC Charge No. 28D-2009-00420." (Doc. 121-1, at 16.) As stated above, the Tenth Circuit has been clear that district courts are not to "examine the details of the offers and counter-offers between the parties, nor impose its notions of what the agreement should provide" in deciding whether the EEOC has fulfilled its conciliation requirements. *EEOC v. Zia Co.*, 582 F.2d 527, 533 (10th Cir. 1978). As such, the Court finds the information sought by Request No. 30 to be irrelevant.

Plaintiff's objection is **sustained** and Defendant's motion is **DENIED** in regard to Request No. 30.

5.      **Requests Nos. 31-33.**

Request No. 31 seeks "[a]ll documents containing, reflecting, or referencing communications to you from any past or present employee of BNSF or on his/her behalf, referring or relating to the subject matter of this lawsuit" while Request No. 32 asks for such communications from the EEOC to such individuals. Request No. 33 seeks "[a]ll documents, including Statements or reports, given to you and/or anyone acting on your behalf by any persons interviewed by you and/or anyone acting on your behalf, with respect to the subject matter of this lawsuit." (Doc. 121-1, at 16-17.) The Court fails to see how information responsive to this request could be considered conciliation materials. Plaintiff has not provided sufficient argument on the issue as it relates to these specific requests. Even to the extent such communications relate to or specifically reference conciliation efforts, the Court also sees no basis to find that such communications would be protected given that Defendant is not considered a member of the "public" to whom production of such materials is prohibited. *See **Associated Dry Goods***, *supra.* Plaintiff's objection is **overruled** and Defendant's motion is **GRANTED** in regard to Requests Nos. 31 and 32.

### 6.     Interrogatory No. 4.

Interrogatory states, "[w]ith respect to every oral communication you have had with Duty (a) describe the substance of the communication; (b) provide the date of the communication; (c) state the mode of the communication (i.e., in person or by other means); and (d) identify any other persons present during such communications."  (Doc. 121-2, at 7.)  The Court finds that it was improper for the Plaintiff to withhold conciliation materials responsive to Interrogatory No. 4 *other than* communications relating to conciliation offers and counter offers.  *See Zia*, 582 F.2d at 533 (holding that it would be improper for it to "examine the details of the offers and counter-offers between the parties, nor impose its notions of what the agreement should provide" in deciding whether the EEOC has fulfilled its conciliation requirements).  As such, Plaintiff's objection is **sustained in part** and **overruled in part** while Defendant's motion is **GRANTED in part** and **DENIED in part** in regard to Interrogatory No. 4.  Plaintiff shall provide a supplemental response to Interrogatory No. 4, detailing all such communications, including those relating to the conciliation process.  Plaintiff shall not, however, divulge the specific conciliation offers and counter-offers discussed with Plaintiff Duty.

### 7.     Interrogatory No. 10.

This interrogatory asks Plaintiff EEOC for "the basis on which you arrived

at the payments requested in the Conciliation Agreement (section III, paragraphs B & C, "Charging Party Relief") you proposed on or about August 24, 2011 in connection with EEOC Charge No. 28D-2009-00420, and describe all documents referenced in arriving at those amounts." (Doc. 121-2, at 11.) As stated numerous times herein, the Tenth Circuit has been clear that district courts are not to "examine the details of the offers and counter-offers between the parties, nor impose its notions of what the agreement should provide" in deciding whether the EEOC has fulfilled its conciliation requirements. *EEOC v. Zia Co.*, 582 F.2d 527, 533 (10th Cir. 1978). The information sought by Interrogatory No. 10 is clearly improper and irrelevant to the District Court's analysis of Plaintiffs' claims and Defendant's defenses. Plaintiff's objection is **sustained** and Defendant's motion is **DENIED** in regard to Interrogatory No. 10.

### 8. Interrogatory No. 11.

This interrogatory asks Plaintiff EEOC to "[i]dentify all persons involved in making decisions on behalf of you with respect to the conciliation process for EEOC Charge No. 28D-2009-00420, including decisions as to what relief to request, how to respond to any proposals from Defendant, and whether to declare conciliation to have been unsuccessful." As previously noted herein, aspects of the conciliation process relating to offers and counter-offers are irrelevant. *See*

subsections and 3,4, 6, and 7, *supra*.  Even so, the Court finds that the identities of individuals involved in the conciliation process on behalf of the EEOC – including those involved in formulating and responding to offers and counter-offers – is relevant.  The identity of these individuals may lead to admissible evidence regarding the issue of whether the EEOC engaged in the mandated good faith conciliation efforts.  Plaintiff's objection is **overruled** and Defendant's motion is **GRANTED** in regard to Interrogatory No. 11.

### 9.    Deposition questions.

Plaintiff's counsel also instructed deponent Samuel James not to respond to various deposition inquiries on the basis that the information requested constituted or implicated conciliation materials. These deposition objections are addressed in Defendant's Motion to Compel Deposition Testimony.  (Doc. 122.)

The subjects of the deposition questions implicated involve whether the deponent investigator made the decision regarding the amounts to be requested in the proposed conciliation agreement (Doc. 123-1, at 20), and whether the EEOC would be willing as part of the conciliation process to consider legal challenges to its investigatory findings (*id*., at 21, 22).  Regardless of whether or not this information implicates protected conciliation materials, the Court fails to see any relevance whatsoever as to Plaintiffs' claims or Defendant's defenses.

It is well-established that the EEOC is required to act in good faith, and must make "a sincere and reasonable effort to negotiate by providing the defendant an adequate opportunity to respond to all charges and negotiate possible settlements." ***EEOC v. Prudential***, 763 F.2d at1169.  Even so, the Tenth Circuit has been clear that district courts are not to "examine the details of the offers and counter-offers between the parties, nor impose its notions of what the agreement should provide" in deciding whether the EEOC has fulfilled its conciliation requirements.  ***EEOC v. Zia***, 582 F.2d at 533.  Because this information is irrelevant on its face, the Court **DENIES** Defendant's Motion to Compel Deposition Testimony (Doc. 122) in this regard.

## C.  Work Product Materials.

Plaintiff has raised the protection of the work product doctrine in response to Defendant's Interrogatories Nos. 1, 4, 6, 7, 9, 10, and 12, and Requests for Production Nos. 1-32 and 34-36.  (*See generally* Doc. 121-1, 121-2.)  The general limitation on the discovery of work product is described in Fed. R. Civ. Proc. 26(b)(3), which provides that, with limited exceptions, "documents and tangible things" prepared by a party or its agents "in anticipation of litigation or for trial" are not discoverable.  "To establish the applicability of the work product privilege, [the withholding party] must show the following elements: '(1) the materials

sought to be protected are documents or tangible things; (2) they were prepared in

anticipation of litigation or for trial; and (3) they were prepared by or for a party or

a representative of that party.'" *U.S. Fire Ins. Co. v. Bunge North America, Inc.*,

No. 05–2192–JWL–DJW, 2008 WL 2548129, at *5 (D. Kan. June 23, 2008)

(quoting *Johnson v. Gmeinder*, 191 F .R.D. 638, 643 (D. Kan. 2000) (citations

omitted)).

> The asserting party has the burden of establishing work
> product protection.  To carry that burden, the proponent
> must make a 'clear showing' that the asserted objection
> applies.  A 'blanket claim' as to the applicability of the
> work product doctrine does not satisfy the burden of
> proof.  It is well settled that the party seeking to invoke
> work product immunity has the burden to establish all
> elements of the immunity and that this burden can be met
> only by an evidentiary showing based on competent
> evidence.

*Hillsdale Environmental Loss Prevention, Inc. v. U.S. Army Corps of Engineers*,

No. 10–2008–CM–DJW, 10–2068–CM–DJW, 2011 WL 1102868, at *8 (D. Kan.

March 23, 2011) (citing *U.S. Fire Ins. Co. v. Bunge N.Am., Inc.*, 247 F.R.D. 656,

657 (D. Kan. 2007)).

Defendant argues that it

> is not seeking access to EEOC's attorneys' notes even if
> they predate the time when BNSF contends that EEOC
> could possibly have been anticipating litigation.  Second,
> BNSF is not seeking any materials claimed as work
> product that were created after the date that EEOC

announced that the pre-lawsuit conciliation process had
failed, which was on December 20, 2011.  But BNSF
does ask the Court to overrule all work-product
objections EEOC has asserted for materials or
communications prior to that date, other than EEOC's
attorneys' own notes.  Those are the categories of
information that make up the bulk of the dispute over the
work-product privilege, although BNSF discusses a few
other items below.

(Doc. 121, at 13-14.)  Defendant continues that any such documents should be

considered "[m]aterials assembled in the ordinary course of business or for other

non-litigation purposes," which are not protected by the doctrine.  (*Id*., at 14 (citing

***Ledgin v. Blue Cross & Blue Shield of Kansas City***, 166 F.R.D. 496, 498 (D. Kan.

1996)).  According to Defendant, Plaintiff EEOC "could not have been anticipating

litigation such that a work-product privilege could apply until, at the earliest,

sometime after the date it announced that conciliation had failed."  (Doc. 121, at

14.)

Plaintiff responds that its

enforcement unit is a neutral fact-finder before
conciliation fails, but the EEOC legal unit operates in
different manner.  EEOC attorneys identify a small
number of charges as potential litigation vehicles for the
Agency by 'flagging' them as 'A' cases when they are
filed with the Commission (either directly with the EEOC
or dual-filed with a state and local agency, as was the
case here).  An EEOC attorney flagged Mr. Duty's
charge in this manner.  Once an EEOC attorney flags a
charge, the attorney is assigned to the charge.  From that

23

point forward, the EEOC attorney assigned to the charge
is providing input to the EEOC Investigator and
evaluating the charge for the purpose of determining
whether it will be suitable for a Commission enforcement
action. The vast majority of charges filed with the EEOC
are not flagged by an EEOC attorney and have no
attorney assigned to them. But on those cases that are
attorney-flagged, all the attorney work product that is
produced is prepared in anticipation of litigation. To
hold otherwise would limit the work product protection
to work that is prepared for 'proceedings in a court of
record,' which is not consistent with the law. Thus, the
EEOC attorney work product withheld in this case is, in
fact, entitled to work product protection.

(Doc. 135, at 23.)

Defendant replies, however, that it "is not asking for EEOC's counsel's

notes or . . . internal EEOC communications with their lawyer." (Doc. 142, at 20.)

Instead, "the communications at issue here are EEOC's communications with

[Plaintiff] Duty and his lawyer, Duty and his lawyer's communications with

EEOC, and communications with third-party, Terry Cordray." (*Id*.) Plaintiff did

not specifically address such documents or communications in its response to

Defendant's motion. As such, any such arguments or objections should be

considered to have been waived.

The Court will, however, assume Plaintiff is arguing its communications

with Duty and his counsel fall under the work product doctrine that Plaintiff

contends came into existence "once an EEOC attorney flags the charge . . . ."

24

(Doc. 135, at 23.) Plaintiff does not, however, indicate when such a "flagging" by an EEOC attorney allegedly occurred in the present case. Thus, the only date available on which the Court may draw this figurative line in the sand is December 20, 2011, the date that the EEOC announced that the pre-lawsuit conciliation process had failed.

Defendant's motion is **GRANTED** in this regard. Plaintiff is directed to produce any responsive information regarding communications between Plaintiff EEOC and Plaintiff Duty (and their counsel) that were created before December 20, 2011, and were withheld on the basis of the work product doctrine.

## D.    Common Interest Doctrine.

Plaintiff has raised the common interest doctrine as a reason not to respond to Request for Production Nos. 1-14, and 17-33, (Doc. 121-1), and Interrogatories No. 4 (Doc. 121-2, at 7). The doctrine was explained by Magistrate David Waxse in the case of *United States Fire Ins. Co. v. Bunge North America*:

> Generally, when a communication between a client and an attorney occurs in the presence of third parties, the attorney-client privilege is waived. The common interest doctrine, however, affords two parties with a common legal interest a safe harbor in which they can openly share privileged information without risking the wider dissemination of that information. The common interest doctrine can only exist where there is an applicable underlying privilege.
> The common interest doctrine is not a separate

privilege, but an exception to waiver of the attorney-client privilege. The common interest doctrine thus acts as an exception to the general waiver rule by facilitating cooperative efforts among parties who share common interests. For the common interest doctrine to attach, 'most courts ... insist that the two parties have in common an interest in securing legal advice related to the same matter – and that the communications be made to advance their shared interest in securing legal advice on that common matter.' 'The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial.'

No. 05-2192-JWL-DJW, 2006 WL 3715927, at *2 (D. Kan. Dec. 12, 2006)

(citations omitted).

Defendant argues that the

EEOC cannot rely on the common-interest privilege as to communications prior to conciliation failure because prior to that time EEOC and Duty did not share a common interest sufficient to rely on the common-interest privilege. . . . the parties must 'have an identical legal interest,' not merely a similar one. But until EEOC had an interest in prosecuting the action – which as a mater of law could only have been after conciliation efforts failed – Duty and EEOC did not have 'identical legal interest[s]. As such, the common-interest exception to waiver cannot apply to any of the pre-conciliation materials.

(Doc. 121, at 16-17.) Defendant contends that this is also true of any pre-conciliation failure communications between the EEOC, Plaintiff Duty, and Terry Cordray, a former employee of Defendant who provides vocational rehabilitation

services who was retained and paid by the EEOC to compile a report on Plaintiff during the EEOC's investigation process.  (*Id*.)

In response, Plaintiff cites numerous cases in which private individuals were considered to share a "common interest" with a governmental agency.  (*See* Doc. 135, at 24-25.)  Unfortunately for Plaintiff, however, none of these cases involved the factual situation occurring in the present matter in which the governmental agency involved has the initial, statutorily-mandated role of conciliator between the individual Plaintiff and his former employer Defendant – a role which subsequently changes if and when the conciliation process is unsuccessful.

The Court agrees with Plaintiff that a common interest exists between the EEOC and Duty – but the Court agrees with Defendant that the common interest between the EEOC and Duty did not exist until the conciliation efforts of the EEOC were unsuccessful and the agency decided to bring suit in its name, giving the EEOC and Duty an identical legal interest.

Defendant's motion is **GRANTED** in this regard.  Plaintiff is directed to produce any responsive information regarding communications between Plaintiff EEOC and Plaintiff Duty (and their counsel), including such communications involving Terry Cordray, that were created before December 20, 2011, and were withheld on the basis of the common interest doctrine.

**E.     Attorney-Client Privilege.**

**1.     Discovery requests.**

Defendant challenges Plaintiff's assertion of the attorney-client privilege in response to Interrogatories Nos. 4 and 10 (Doc. 121-2, at 7, 11) and Requests for Production Nos. 14, 17-28, and 31-32[5] (Doc. 121-1, at 9-17) for any communications between the EEOC, Duty, and/or Duty's attorney that occurred before the EEOC's statutorily-mandated conciliation was deemed unsuccessful. Defendant specifically states that it "does not seek any communications between EEOC's attorneys and EEOC employees."  (Doc. 121, at 19.)  Plaintiff's response discusses only those communications within the EEOC, and states that "[a]ll of the information the EEOC has withheld under the attorney/client privilege are communications between counsel and personnel in the EEOC Enforcement Unit and Office of General Counsel concerning legal advice about Mr. Duty's charge." (Doc. 135, at 21.)  For the reasons set forth above in regard to the work product doctrine and the common interest doctrine, Defendant's motion is **GRANTED** to the extent such communications occurred between the EEOC, Duty, and/or Duty's attorney before the EEOC's statutorily-mandated conciliation was deemed

---

[5] The Court notes that Defendant is not challenging Plaintiff's assertion of the attorney-client privilege in regard to Requests for Production Nos. 1-13, 15, 16, 29, and 30.

unsuccessful and have been withheld on the basis of the attorney-client privilege.

### 2. Deposition questions.

Plaintiff's counsel also instructed deponent Samuel James not to respond to various deposition inquiries on the basis that the information requested was protected by the attorney-client privilege. These deposition objections are addressed in Defendant's Motion to Compel Deposition Testimony. (Doc. 122.)

The deposition questions implicated involve the EEOC investigator's conclusions regarding the sufficiency of the work performed/tools used (Doc. 123-1, at 13), why it took approximately nine months to reach a conclusion regarding the alleged insufficiency (*id*., at 14), why the EEOC determinations did not include a reference to the phrase "reasonable cause" (*id*., at 16), and whether the EEOC was willing to consider legal challenges to its determination of cause as part of a conciliation agreement (*id*., at 21). Plaintiff makes little effort to explain how or why the attorney-client privilege would prohibit deposition responses to these questions. (*See generally* Doc. 135, at 20-22.) Even so, the Court fails to see how this information is in any way relevant to Plaintiffs' claims or Defendant's defenses. Further, these questions appear to be nothing more than an additional back door attempt to attack the adequacy of the EEOC's investigation. Because this information is irrelevant on its face, the Court **DENIES** Defendant's Motion to

Compel Deposition (Doc. 122) Testimony in this regard.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Responses to Defendant's First Interrogatories and First Requests for Production of Documents (Doc. 120) is **GRANTED in part** and **DENIED in part** as more fully set forth herein.

IT IS FURTHER ORDERED that Defendant's Motion to Compel Deposition Testimony (Doc. 122) is **DENIED**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 18th day of April, 2014.

 S/ KENNETH G. GALE
KENNETH G. GALE
United States Magistrate Judge