# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| KENT DUTY, ) | Case No.12-02634-JWL-KGG |
| ) | |
| Plaintiff-Intervenor, ) | |
| v. ) | |
| ) | |
| BNSF RAILWAY COMPANY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## ORDER ON DEFENDANT'S MOTION TO COMPEL

Now before the Court is Defendant's "Motion to Compel Responses to Defendant's First Interrogatories and First Requests for Production of Documents from Plaintiff-Intervenor" Kent Duty (Doc. 124). For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** this motion.

## BACKGROUND

This is an employment discrimination case brought under the Americans with Disabilities Act. Plaintiff-Intervenor Kent Duty ("Mr. Duty") applied for a position with Defendant railroad as a locomotive electrician. Mr. Duty was hired subject to a medical examination. He was then denied the position after a medical examination by Defendant opined that he is unable to perform essential functions

of the job because of a physical impairment in one of his hands.

## DISCUSSION

Fed.R.Civ.P. 26(b) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." As such, the requested information must be both nonprivileged and relevant to be discoverable.[1]

"'Discovery relevance is minimal relevance,' which means it is possible and reasonably calculated that the request will lead to the discovery of admissible evidence." ***Teichgraeber v. Memorial Union Corp. of Emporia State University***, 932 F.Supp. 1263, 1265 (D. Kan. 1996) (internal citation omitted). "Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." ***Smith v. MCI Telecommunications Corp.***, 137 F.R.D. 25, 27 (D.Kan.1991). Stated another way, "discovery should ordinarily be allowed unless it is clear that the information

---

[1] Most of Plaintiff's objections relate to issues of privilege, although relevance is also implicated in the Court's decision.

sought can have no possible bearing on the subject matter of the action." *Snowden By and Through Victor v. Connaught Lab.*, 137 F.R.D. 325, 341 (D.Kan.1991), appeal denied, 1991 WL 60514 (D.Kan. Mar. 29, 1991).

The scope of discovery is broad, but not unlimited. If the proponent has failed to specify how the information is relevant, the Court will not require the respondent to produce the evidence. *Gheesling v. Chater*, 162 F.R.D. 649 (D. Kan. 1995). Within this context, the Court will address the various discovery requests at issue.

A.   **Interrogatories at Issue.**

   1.   **Nos. 1 and 2.**

These two interrogatories seek a list of "every action" by Defendant that Plaintiff contends constituted disability discrimination (No. 1) and retaliation (No. 2). (Doc. 125-2, at 2-6.) Plaintiff objects that both interrogatories call for a narrative response.

As an initial matter, Courts in this District have looked with disfavor at "blockbuster" narrative interrogatories, which "require the responding party to provide the equivalent of a narrative of its entire case together with identification of virtually all supporting evidence for each and every fact." *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2011 WL 4036424, at *19 (D. Kan.

3

Sept. 12, 2011) (citation omitted). "Indiscriminate use of blockbuster interrogatories, such as these, do not comport with the just, speedy, and inexpensive determination of the action." *Id*., (quoting **Hilt v. SFC Inc.**, 170 F.R.D. 182, 186 (D.Kan.1997)). Simply because a discovery request uses the "each and every" language does not make it objectionable *per se*. *Id*.

The Court finds that Interrogatories Nos. 1 and 2 ask about specific aspects of Plaintiff's claims and, thus, are "sufficiently narrow so as to not be unduly burdensome or overly broad on [their] face." *Id*. Further, it is imperative for Defendant to be aware of all factual bases for Plaintiff's claims for discrimination and retaliation. As such, the "each and every" language is appropriate and justified in this instance.

In response to Plaintiff's objections, Defendant argues that it has not requested a narrative, but rather has requested a "list" of discriminatory or retaliatory actions. Defendant argues that Plaintiff has provided a narrative response, however, which Defendant contends is improper. Defendant argues it "needs to know what specific adverse actions are at issue to move for summary judgment." (Doc. 125, at 3.) Defendant also argues that Plaintiff's narrative response makes "unclear" as to whether he "is actually seeking relief for every alleged BNSF action he mentions or simply providing a narrative of the facts

4

surrounding his claims." (*Id.*, at 3-4.)

The Court finds that Plaintiff's response contains an abundance of factual information. The fact that Plaintiff did not enumerate these facts in bullet points (or whatever type or format of "list" Defendant would prefer) is irrelevant. The Court reminds Plaintiff, however, that he is bound – and limited – by the sworn discovery responses to these interrogatories. The interrogatories request information on "every" discriminatory or retaliatory action by Defendant. Plaintiff will not be allowed to subsequently ambush Defendant with additional examples of discrimination or retaliation in response to dispositive motions and/or at trial.[2] That stated, Defendant's motion is **DENIED** in regard to Interrogatories Nos. 1 and 2.

    2.    **Interrogatory No. 5.**

This interrogatory seeks identification of the sections of the Americans with Disabilities Act ("ADA") and/or other regulations Plaintiff contends Defendant violated and "facts that you believe support your contentions." (Doc. 125-2, at 7.) Plaintiff argues that this is improper because it asks him, as a non-lawyer, "to perform Defendant's research of the law and/or to obtain this research from his

---

[2] To the extent Plaintiff needs to supplement his response, he is reminded to so in a timely manner.

attorneys, seeking to disclose attorney client communications and the mental impressions and legal conclusions protected as opinion work product." (Doc. 134, at 5.)

Plaintiff has chosen to sue Defendant for violations of the ADA. In order to do so, Plaintiff and/or his counsel are required to know the legal basis for their lawsuit – and they have a duty to inform Defendant of said basis. Further, it is improper to object that an interrogatory requests a legal conclusion. Plaintiff's objections are **overruled** and Defendant's motion is **GRANTED** in regard to Interrogatory No. 5.

### 3. Interrogatory No. 6.

Interrogatory No. 6. seeks information regarding "every oral communication" Plaintiff Duty has had with the EEOC. (Doc. 125-2, at 8.) Plaintiff raises the "common interest privilege," which the Court previously addressed in a prior discovery order in this case. (*See* Doc. 150.) The doctrine was explained by Magistrate David Waxse in the case of ***United States Fire Ins. Co. v. Bunge North America***:

> Generally, when a communication between a client and an attorney occurs in the presence of third parties, the attorney-client privilege is waived. The common interest doctrine, however, affords two parties with a common legal interest a safe harbor in which they can openly share privileged information without risking the wider

> dissemination of that information. The common interest doctrine can only exist where there is an applicable underlying privilege.
> The common interest doctrine is not a separate privilege, but an exception to waiver of the attorney-client privilege. The common interest doctrine thus acts as an exception to the general waiver rule by facilitating cooperative efforts among parties who share common interests. For the common interest doctrine to attach, 'most courts ... insist that the two parties have in common an interest in securing legal advice related to the same matter – and that the communications be made to advance their shared interest in securing legal advice on that common matter.' 'The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial.'

No. 05-2192-JWL-DJW, 2006 WL 3715927, at *2 (D. Kan. Dec. 12, 2006) (citations omitted); *see also* Doc. 150, at 25-26.

As it did in regard to the discovery requests at issue in its prior motion to compel against the EEOC, Defendant has limited its inquiry to "communications that occurred prior to the earliest possible date on which the EEOC and Duty could have had a common-interest for privilege purposes – the day that EEOC announced that conciliation had failed." Defendant continues that

> a community of interest exists only when the parties have *identical* legal interests. Duty cannot rely on the common-interest privilege as to communications prior to conciliation failure because prior to that time EEOC and Duty did not share a common interest sufficient to rely on the common-interest privilege.
> As an initial matter, EEOC's interests and Duty's

7

> interests could not have been identical during the investigatory period of Duty's EEOC charge because "[d]uring initial investigations the EEOC is a neutral third party. . . ." EEOC's investigator confirmed that fact during his deposition. The same is true for the time period following the investigation while EEOC was obligated to attempt to resolve the dispute through conciliation. Because (with one exception not applicable here) EEOC cannot sue until after conciliation fails, EEOC and Duty could not have had "identical legal interests" during the conciliation phase of EEOC's processing of Duty's discrimination charge. Before the failure of conciliation, EEOC's authorized role is in attempting to use informal methods to resolve the dispute. Thus, communications prior to conciliation failure could only legitimately have been in connection with EEOC's legal duty to attempt to resolve the dispute informally not to assist in development of a joint defense or in furtherance of some common legal interest related to litigation.

(Doc. 125, at 7-8 (internal citations omitted).)

As it found in the prior discovery Order, the Court agrees with Plaintiff that a common interest exists between the EEOC and Duty – but the Court agrees with Defendant that the common interest between the EEOC and Duty did not exist until the conciliation efforts of the EEOC were unsuccessful and the agency decided to bring suit in its name, giving the EEOC and Duty an identical legal interest. (Doc. 150, at 27.) Plaintiff's common interest privilege objection is **overruled**.

Plaintiff's objection based on the work product doctrine is also **overruled** as

8

to any information shared with the EEOC before the unsuccessful completion of the conciliation process. Any privilege that may have existed was waived during communications with the EEOC during the time the agency was acting as a neutral third party.

Finally, for the reasons discussed in the Court's prior discovery Order, the Court finds that Plaintiff incorrectly relies on 42 U.S.C. § 2000e-5(b) as a statutory basis for the privilege.

> The language of [*EEOC v.*] *Associated Dry Goods* specifically addresses the portion of the statute forbidding public disclosure of any matters arising in informal conciliation 'without the written consent of the persons concerned.' 449 U.S. 590, 598, at n.13, 101 S.Ct. 817, 822, at n. 13 (citing § 2000e-5(b)). In that context, the Supreme Court held that '[t]his phrase suggests that the parties, the 'persons' whose consent would most obviously be necessary, are not members of the 'public' to whom disclosure is forbidden.' *Id*., at n.13.

As such, Defendant's motion is **GRANTED** in regard to Interrogatory No. 6. Plaintiff is directed to produce any responsive information regarding communications between himself and the EEOC (and their counsel) that were created before December 20, 2011, and were withheld on the basis of the common interest doctrine, attorney-client privilege, and/or the work product doctrine.

  **4.**  **Interrogatory No. 7.**

This interrogatory seeks facts supporting Plaintiff's "contention that Defendant is liable for punitive damages . . . ." (Doc. 125-2, at 9.)  Plaintiff objects on the basis of work product.  For the reasons discussed in section B, *supra*, regarding Interrogatory No. 5, Plaintiff's objections are **overruled** and Defendant's motion is **GRANTED** in regard to Interrogatory No. 7.  Plaintiff has chosen to bring a claim for punitive damages against Defendant.  As such, Plaintiff and his counsel have a duty to inform Defendant of said basis.

### 5. Interrogatory No. 14.

Interrogatory No. 14 asks for information regarding health care professionals who have treated Plaintiff in the past seven years. (Doc. 125-2, at 12-13.)  Plaintiff objects that this information is protected by the physician-patient privilege. (*Id*., at 13.)  Plaintiff also contends that he has he "is not presently seeking recovery for any diagnosable medical or psychological condition resulting from the discriminatory and retaliatory actions of Defendant . . . ." (*Id*.)

The Court agrees with Defendant that the physician-patient privilege is not an appropriate basis to withhold the requested information.  ***Kear v. Kohl's Dept. Stores, Inc***., No. 12-1235-JAR-KGG, 2013 WL 3088922, at *3 (D. Kan. June 18, 2013) (holding that the physician-patient privilege has not been recognized under federal common law by either the Supreme Court or the Tenth Circuit).  Further, to

the extent Plaintiff is seeking damages for emotional distress, "mental anguish, stress, loss of enjoyment of life, loss of self esteem, anxiety, depression, feelings of helplessness," etc. (Doc. 125-4, at 6), the requested information is relevant and discoverable. *See Owens v. Sprint/United Management Co.*, 221 F.R.D. 657, 659 (D. Kan. 2004) (holding that "[g]enerally, discovery requests seeking an employment discrimination plaintiff's medical and psychological records are held to be relevant as to both causation and the extent of plaintiff's alleged injuries and damages if plaintiff claims damages for emotional pain, suffering, and mental anguish"). Plaintiff's objection is **overruled** and Defendant's motion is **GRANTED** in regard to Interrogatory No. 14.

    **6.    Interrogatory No. 15.**

This Interrogatory requests information regarding Defendant's employees that have been interviewed by, or on behalf of, Plaintiff. (Doc. 125-2, at 13.) Plaintiff objects that the information is protected by the work product doctrine, arguing that

> the identity of the persons with whom Duty's attorneys have spoken (but have not provided a statement required to be disclosed by Rule 26(b)(5)), are part of the mental processes underlying the work product, as the interrogatory seeks to reveal with witnesses Duty's attorneys believe are important enough to speak with and to track preparation of Duty's counsel in preparing for trial. This invasion of the mental processes of Duty's

11

> attorneys far exceed the intentions of discovery and are the basic reasons for the protection of the mental processes of attorneys' work product.

(Doc. 134, at 14.) Plaintiff's arguments are thoroughly misguided. The information requested in purely factual (who was interviewed, when they were interviewed, who was present).[3] The law is well-settled that the work product doctrine does not protect the disclosure of facts. See **Resolution Trust Corp. v. Dabney**, 73 F.3d 262, 266 (10th Cir.1995) ("Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product."). Defendant's motion is **GRANTED** in regard to Interrogatory No. 15.

### 7. Interrogatory No. 16.

Interrogatory No. 16 inquires as to oral or written statements by Defendant or its employees that "evidence or support any allegation or claim" made by Plaintiff's objections that the interrogatory is overly broad and calls for a narrative response are **overruled**. In addition, for the reasons set forth in section A.6., *supra*, the Court **overrules** Plaintiff's work product objections. Defendant's motion is **GRANTED** in regard to Interrogatory No. 16.

---

[3] Plaintiff asserts that no written statements have been created.

**8.     Interrogatory No. 18.**

This interrogatory seeks information regarding non-expert opinion testimony Plaintiff intends to offer.  (Doc. 125-2, at 14-15.)  Plaintiff objects that the interrogatory is beyond the scope of the Federal Rules of Civil Procedure and would implicate information protected from disclosure by the work product doctrine.  (*Id*., at 15.)  For the reasons set forth in section A.6., *supra*, the Court **overrules** Plaintiff's objections.  Defendant's motion is **GRANTED** in regard to Interrogatory No. 18.  To the extent Plaintiff intends to offer non-expert witnesses who will provide opinion testimony, he is required to identify these individuals.

**B.     Requests for Production at Issue.**[4]

**1.     Documents relating to medical treatment and conditions.**

Requests Nos. 34 and 35 seek information regarding Plaintiff's "physical, mental, or emotional condition, treatment, care, counseling and/or hospitalizations" over the past seven years as well as any "counseling or treatment" he has received as a result of the incident at issue.  (Doc. 125-1, at 12.)  Plaintiff argues that he has received no health care or mental health care as a result of the allegations in this lawsuit.  (Doc. 134, at 17.)  While this may be true, this does not mean that any

---

[4] The parties appear to have resolved their disputes regarding Requests Nos. 29, 30, and 56.

other medical or mental health care treatment he has received is irrelevant or non-discoverable.  *See Owens*, 221 F.R.D. at 659 (holding that "[g]enerally, discovery requests seeking an employment discrimination plaintiff's medical and psychological records are held to be relevant as to both causation and the extent of plaintiff's alleged injuries and damages if plaintiff claims damages for emotional pain, suffering, and mental anguish.").   To the extent Plaintiff continues to seek damages for emotional distress and/or mental anguish, the information requested is both relevant and discoverable.  Plaintiff's objections are **overruled** and Defendant's motion is **GRANTED** in regard to Requests Nos. 34 and 35.

### 2. Plaintiff's communications with non-parties.

Request No. 24 seeks documents regarding Plaintiff's communications and payments to Terry L. Cordray, a former employee of Defendant who provides vocational rehabilitation services who was retained and paid by the EEOC to compile a report on Plaintiff during the EEOC's investigation process.  (Doc. 125-1, at 9.)  Defendant is aware that Plaintiff contemplates naming Cordray as an expert witness.  To the extent he is to be designated as an expert by Plaintiff, all required, discoverable information will be produced in accordance with the relevant portions of the Court's Scheduling Order (which will be entered in this case following the resolution of the outstanding discovery disputes).  Defendant's

14

pre-designation awareness of Cordray's involvement in this case is irrelevant in regard to when information governed by Fed.R.Civ.P. 26(b)(4) should be produced. (Doc. 125, at 22-23.) The Court agrees, however, that any non-privileged, pre-litigation information relating to Cordray should be produced presently. Defendant's motion is **GRANTED in part** and **DENIED in part** as to Request No. 24.

Request No. 25 seeks information regarding to Scott Woods, Dsc, PT. (Doc. 125-1, at 9.) This information, is discoverable absent attorney work product materials, such as reports written by Plaintiff's counsel containing counsel's mental impressions regarding Woods and/or their bearing on Plaintiff's claims. Based on representations of Plaintiff's counsel (Doc. 134, at 19-20), the Court is comfortable that no such documents exist. To the extent Plaintiff locates documentation regarding payment he made for Woods assessment, the same is to be produced.

### 3. Plaintiff's communications with the EEOC.

Requests Nos. 40-45 seek information regarding certain communications Plaintiff had with the EEOC. For the reasons set forth in section A.3, *supra*, Plaintiff's objections regarding the common interest privilege and work product doctrine are **overruled**. The same is true for Plaintiff's reliance on the statutory

provisions of 42 U.S.C. § 2000e-5(b).  Defendant's motion is **GRANTED** in regard to Requests for Production 40, 41, 42, 43, 44, and 45.

### 4. Plaintiff's communications with Defendant's employees.

Defendant acknowledges that Plaintiff has indicated he has no documents responsive to Requests Nos. 48 and 50.  Even so, Defendant asks for the Court to determine two issues relating to the document requests.  Because Plaintiff has no responsive documents, and is therefore not withholding responsive information, the Court declines Defendant's request for what would amount to an impermissible advisory opinion.  *See* **Stephenson v. Young**, No. 10-2197-KHV-KGG, 2010 WL 5422574, at *2 (D. Kan. Dec. 15, 2010).

### 5. Attorney fee agreement.

Plaintiff argues, in part, that the information sought by Request No. 52 relating to attorneys fees (Doc. 125-1, at 19) is premature.  The Court agrees.  The information is irrelevant, and not discoverable, unless and until Plaintiff is awarded attorney's fees.

Fed.R.Civ.P. 54(d)(2) provides that a "claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."  D. Kan. Rule 54.2(f) states that "discovery may not be conducted with motions for awards of attorney's

fees unless the court permits upon motion and for good cause."

The principal of D.Kan. Rule 54.2 is that motions for attorney's fees should not usually require discovery, thus discovery is permitted only for good cause after a motion has been made for fees, and after the consultation requirements of the rule have been satisfied.  Defendant's discovery request is premature.  If a motion for attorneys' fees is ultimately made in this case, and if the parties are unable to reach an agreement by consultation as required by the rule, Defendant may move to conduct discovery upon a showing of good cause.  The discovery, at this point, is simply not yet relevant.  *See* ***Newman v. Union Pacific R. Co***., No. 12-2518-JTM-KGG, 2013 WL 1308977, at *1 (D. Kan. March 29, 2013).  Defendant's motion is, therefore, **DENIED without prejudice** as premature in regard to Request No. 52.

### 6.     Documents Plaintiff used to refresh his recollection.

Now that Plaintiff's deposition has occurred, he is required to supplement his response to Request No. 55, which seeks "documents reviewed by you to refresh recollection in connection with any deposition of you to be taken in this case."  (Doc. 125-1, at 20.)  Defendant's motion is **GRANTED** in regard to Request No. 55.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel

Responses to Defendant's First Interrogatories and First Requests for Production of Documents from Plaintiff-Intervenor (Doc. 124) is **GRANTED in part** and **DENIED in part** as more fully set forth herein.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 10th day of June, 2014.

                                       S/ KENNETH G. GALE
                                       KENNETH G. GALE
                                       United States Magistrate Judge